IN THE MATTER OF: L.W., Minor child

No. COA05-192

(Filed 3 January 2006)

**Termination of Parental Rights— failure to appoint guardian ad litem for parent—mental illness**

The trial court erred in a termination of parental rights case by failing to hold a hearing to determine respondent mother's entitlement under N.C.G.S. § 7B-1111(a)(6) to the appointment of

a guardian ad litem at the hearing where the minor child was adjudicated neglected, and the case is remanded for appointment of a guardian ad litem for respondent and a new hearing. Although the trial court did not terminate respondent's parental rights by specifically relying on dependency, the mother's mental health issues were present throughout the permanency planning reviews and were so intertwined with the child's neglect as to obviate consideration of the termination order without concurrent consideration of the mental issues that were present.

Appeal by respondent from order entered 27 September 2004 by Judge Mark Galloway in Person County District Court. Heard in the Court of Appeals 28 November 2005.

*Susan J. Hall for respondent-appellant.*

*No brief filed for appellees.*

MARTIN, Chief Judge.

Respondent-mother ("mother") appeals from an order terminating her parental rights to her minor child, L.W. We reverse and remand.

L.W. was placed in non-secure custody on 17 September 2001 pursuant to a petition by the Person County Department of Social Services ("DSS") alleging that he was a dependent juvenile. The trial court adjudicated L.W. dependent and transferred custody to DSS in an order dated 2 October 2001 but ultimately returned custody of L.W. to mother in March 2002 due to improvement resulting from DSS' efforts to eliminate the need for placement of L.W. outside of the home.

At a subsequent home visit, social workers noted clothes, dirty diapers, and other items in disarray in the house; a plate of chicken bones and bugs inside L.W.'s playpen; and a knife with a blade approximately seven inches long on an end table accessible to L.W. When asked about the knife, mother spoke of killing someone and stated she was "about to use it now" when asked a second time. Social workers further questioned mother regarding whether she was attending her mental health needs, including diagnoses for ADHD and bipolar disorder for which mother received Social Security disability. Other noted concerns included anecdotal evidence that mother allowed L.W. to cross the street without proper supervision and that a small

fire in the oven occurred due to mother's failure to properly clean grease from the stove. As a result of these concerns, DSS again petitioned the court, alleging L.W. to be neglected, and the trial court placed L.W. in non-secure custody with DSS on 23 April 2002.

On 22 May 2002, the trial court adjudicated L.W. neglected, granted custody to DSS, but ordered that L.W. remain in mother's house subject to DSS supervision. The trial court made findings that mother had failed to maintain her mental health counseling appointments or medication and such failure had negatively impacted her ability to care for L.W. The trial court further found the state of mother's house unacceptable to serve as L.W.'s residence without improvement. The trial court ordered, in pertinent part, that mother (1) not consume alcohol or drugs or associate with individuals consuming such products, (2) not take L.W. into areas known for substance abuse, (3) attend parenting and mental health counseling sessions as set up by DSS or Family Connections and take necessary medication, (4) keep the house neat and clean, and (5) allow no cohabitation. These requirements were largely maintained in review orders entered by the trial court until April of 2004.

During this period of review, mother's compliance with the trial court's orders regarding the cleanliness of the house was generally poor with short periods of heightened compliance. Likewise, mother was essentially non-compliant with mental health counseling and medication issues, although one review order entered in August of 2003 indicates some temporary improvement in that area as well. In addition, mother refused to abide by the court's requirement that she not associate or bring into the house persons associated with substance abuse. Mother resumed a relationship with an individual who was recently released from prison on drug charges ("Smith") and eventually married him and brought him into her home. Additional issues of non-compliance involved mother's failure to obtain her GED or complete vocational rehabilitation. In at least one review order, the trial court incorporated findings indicating mother's mental health was a "major issue" and paramount concern and listed mental health considerations in each of the review orders. The trial court removed L.W. from the home and placed him in foster care for these concerns.

On 15 April 2004, DSS petitioned to terminate mother's parental rights. After conducting a hearing, the trial court terminated mother's parental rights in an order dated 27 September 2004. In that order, the trial court enumerated the services made available to mother, includ-

ing rental subsidies, vocational rehabilitation, transportation, in-home services, case management, and trips to stores to acquire needed household items. Mother's attendance at mental health therapy continued to be sporadic, and she resisted compliance. Although mother completed anger management counseling, she refused to take medication for emotional problems and was subsequently hospitalized. Regarding employment, mother failed to finish a GED program or vocational rehabilitation despite a finding by the trial court that "her mental abilities would permit her to complete the GED program." Mother abused assistance by DSS when she sold an air conditioning unit that was provided to her. Despite a court order to desist her relationship with Smith due to his connections with drugs and the effect this might have on L.W., mother subsequently married him and was expecting a second child with him. Continued problems with the cleanliness of the house were evident in the trial court's findings that the house was often "filthy" and the floor was "littered with trash and dirty diapers." In addition, mother was not keeping all of her counseling appointments.

Based on these findings, the trial court concluded that, pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (a)(2), grounds existed to terminate mother's parental rights in that mother had neglected L.W. and wilfully left L.W. in the custody of DSS in excess of twelve months with no reasonable progress towards correcting the conditions leading to L.W.'s removal. Mother appeals, asserting the trial court erred in failing to appoint a guardian ad litem despite her mental health disorders, in concluding mother wilfully left L.W. in foster care for more than twelve months without reasonable progress despite insufficient evidence, and in concluding respondent neglected L.W. despite insufficient evidence.

The dispositive issue presented on appeal is whether the court committed reversible error by failing to hold a hearing to determine mother's entitlement to the appointment of a guardian ad litem at the termination hearing where L.W. was adjudicated neglected. Mother cites N.C. Gen. Stat. § 7B-1101 (requiring appointment of a guardian ad litem to a parent where it is alleged the parent's rights should be terminated under N.C. Gen. Stat. § 7B-1111(a)(6)), N.C. Gen. Stat. § 7B-602(b)(1) (requiring appointment of a guardian ad litem to a parent where it is alleged that the juvenile is dependent because of, *inter alia*, the parent's substance abuse, mental retardation or illness, or other condition impacting the proper care and supervision of the juvenile by the parent), and prior cases from our

appellate courts reversing adjudications of dependency by a parent incapable of supervising the juvenile due to mental impairment. We note parenthetically that our General Assembly has amended the language concerning the appointment of a guardian ad litem to a parent under both N.C. Gen. Stat. § 7B-1101 and N.C. Gen. Stat. § 7B-602(b). However, those amendments are applicable only to actions or petitions filed on or after 1 October 2005. 2005 N.C. Sess. Laws 398. Consequently, we apply the pre-amendment statutory language and interpretive case law.

Mother concedes that these authorities are not directly controlling because her rights were not terminated under N.C. Gen. Stat. § 7B-1111(a)(6) nor was L.W. adjudicated dependent. Mother nonetheless argues that the underlying evidence, the number of findings regarding mental health by the trial court, and the trial court's incorporation of previous petitions involving dependency all tend to show that "[mother's] mental health status was at issue" in determining whether to terminate her parental rights.

Terminating a parent's rights involves a two-stage process of adjudication and disposition. *In re J.A.O.*, 166 N.C. App. 222, 224, 601 S.E.2d 226, 228 (2004). The adjudicatory stage requires the petitioner to show clear and convincing evidence of the existence of one of the statutory grounds under N.C. Gen. Stat. § 7B-1111 for terminating parental rights. *Id.* If any one of those grounds is found to exist, the trial court proceeds to the dispositional stage and considers whether termination is in the best interests of the child. *Id.* "[This Court] reviews the trial court's decision to terminate parental rights for abuse of discretion." *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002).

Our Juvenile Code provides that "a guardian ad litem shall be appointed . . . to represent a parent" where termination is sought "pursuant to G.S. 7B-1111[(a)](6), and the incapability to provide proper care and supervision pursuant to that provision is the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or another similar cause or condition." N.C. Gen. Stat. § 7B-1101 (2003). In relevant part, grounds exist under N.C. Gen. Stat. § 7B-1111(a)(6) (2003) to terminate a parent's rights where "substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition" renders the parent incapable ("unable or unavailable to parent the juvenile" and without "an appropriate alternative child care arrangement") of providing proper care and supervision of the juvenile, "such that the juvenile is a dependent

juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future." A dependent juvenile is one "in need of assistance or placement because the juvenile has no parent . . . responsible for the juvenile's care or supervision or whose parent . . . is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2003).

Although these statutory provisions concern dependency, this Court has previously noted that they may be implicated where neglect is the ground pursued by DSS and found by the trial court to terminate a parent's rights. For example, we have utilized these statutory provisions where "there [is] some evidence that tend[s] to show that [a] respondent's mental health issues and the child's neglect were so intertwined at times as to make separation of the two virtually, if not, impossible." *In re J.D.*, 164 N.C. App. 176, 182, 605 S.E.2d 643, 646, *disc. review denied*, 358 N.C. 732, 601 S.E.2d 531 (2004). We have further stated that reference to N.C. Gen. Stat. § 7B-1111(a)(6) in an order terminating parental rights is not necessary to trigger a trial court's duty to appoint a guardian ad litem where a respondent's "mental instability and her incapacity to raise her minor children were central factors in the court's decision to terminate her parental rights" and where it was "clear that the trial court believed respondent was unable to care for or parent the minor children due, in part, to her mental illness." *In re T.W.*, 173 N.C. App. 153, 160, 617 S.E.2d 702, 705-06 (2005). In both *J.D.* and *T.W.*, it was the substance of the trial court's reasoning, not specific citations to or allegations of dependency, that controlled whether the appointment of a guardian ad litem to a parent with mental health issues was statutorily required.

The same is true in the instant case. Although the trial court did not terminate mother's parental rights by specifically relying on dependency, the issues that were present throughout the permanency planning reviews and that culminated in the termination order were intertwined in such a way as to obviate consideration of the termination order without concurrent consideration of the mental issues that were present. For example, the trial court incorporated findings from previous orders concerning specific instances of conduct indicating the need for "serious therapy" in its order terminating mother's parental rights. The trial court referenced mother's poor attendance and compliance with mental health therapy and anger management. Mother's failure to take medication for emotional problems was con-

sidered by the court in the termination order. In addition, the record indicates mother was hospitalized a couple of months prior to the termination proceeding for suicidal tendencies, was placed on prescription medication for depression, and receives social security disability for bipolar disorder, ADHD, and oppositional defiant disorder. Significant portions of the social worker's testimony and mother's cross-examination at the hearing dealt with mother's mental health. Given these facts and the trial court's emphasis and reliance on mother's mental health issues, we hold the trial court erred in failing to conduct a hearing regarding the appointment of a guardian ad litem for mother. Accordingly, we reverse the termination order and remand for appointment of a guardian ad litem for respondent and a new hearing on the petition to terminate respondent's parental rights to L.W.

Reversed and remanded.

Judges McGEE and ELMORE concur.