645 S.E.2d 772 (2007)
In the Matter of E.P., M.P., Minor Children.
No. COA06-687.
Court of Appeals of North Carolina.
June 5, 2007.
Thomas R. Young, Taylorsville, for Alexander County Department of Social Services, petitioner-appellant.
Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Alyssa M. Chen, Raleigh, for respondent-appellee mother.
Hartsell & Williams, P.A., by Christy E. Wilhelm, Kannapolis, for respondent-appellee father.
JACKSON, Judge.
On 16 August 2005, Alexander County Department of Social Services ("DSS") filed juvenile *773 petitions alleging that 2-year-old M.P. and 9-month-old E.P. were neglected and dependent juveniles. According to the petitions, the children were neglected because their parents abused alcohol, engaged in acts of domestic violence in front of the children, and had been evicted from two dwellings as a result of unpaid rent and utility bills. Additionally, the petitions alleged that respondent mother had, on one occasion, left the children unattended when she locked herself in a bathroom and cut her wrists while intoxicated. With respect to dependency, DSS alleged that, despite the provision of case management services, the parents had been unwilling to create a safe, permanent home for the children in their own household and had been unwilling to utilize efforts to create an appropriate alternative child care arrangement.
On 9 September 2005, DSS filed an application with the trial court seeking an order for the disclosure of "confidential alcohol and/or drug abuse patient records" regarding the parents pursuant to 42 C.F.R. § 2.1 et seq. (2004). The application stated that the records provided the only known documented source of evidence that would be germane to both the adjudication and dispositional stages in the juvenile proceedings. In addition, on 13 September 2005, DSS served a subpoena on John Alspaugh of Universal Mental Health, requesting that he "produce records related to substance abuse treatment provided for or scheduled for [the parents] since 2-5-2005."
It appears that DSS' motion was heard on the first day of the adjudication hearing. After hearing arguments by counsel, but without reviewing the records at issue, the trial judge declined to require production of the records or admit the records into evidence because "they [went] more to disposition than to adjudication." The trial judge stated that he would reconsider the issue "for purposes of disposition."
At the close of DSS' evidence, respondents moved to have the petitions dismissed. The trial judge orally found that there was "ample evidence" of substance abuse by respondent mother, "some evidence" of substance abuse by respondent father, but that any domestic violence between respondents had been "of a minor nature." The judge also found that there was "no substantial evidence of any connection between the substance abuse and domestic violence and the welfare of [the] two children" and that the family's issues were "being adequately addressed in the family setting at the present time." The judge entered an adjudication order on 6 January 2006, finding that "the allegations in the petition have not been proven by clear and convincing evidence." He, therefore, ordered the petitions be dismissed.
DSS appeals from the order of the district court dismissing the juvenile petitions alleging neglect and dependency as to M.P. and E.P., the two minor children of respondents mother and father. On appeal, DSS argues the trial court erred in (1) denying its motion for disclosure of the respondent parents' substance abuse records, (2) refusing to admit those records at the adjudication stage, and (3) dismissing the juvenile petitions at the close of DSS' evidence.
DSS argues the trial court erred by concluding that respondents' substance abuse records were not relevant to the adjudication hearing and, therefore, declining to require their production or admit them into evidence. DSS argued at the hearing that the disputed medical records related to respondents' substance abuse history during the period immediately preceding the filing of the petitions and would show (1) the parents' actual chemical dependence, (2) whether treatment was required for that dependence, and (3) whether the parents were obtaining available treatment. The trial court declined to admit them into evidence, concluding-based solely on the arguments of counselthat the records went "more to disposition than to adjudication."
"Where the juvenile is alleged to be abused, neglected, or dependent, the rules of evidence in civil cases shall apply." N.C. Gen.Stat. § 7B-804 (2005). Pursuant to the North Carolina Rules of Evidence, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen.Stat. § 8C-1, Rule 401 (2005). While "[a] trial court's rulings on relevancy technically are *774 not discretionary and therefore are not reviewed under the abuse of discretion standard[,] . . . such rulings are given great deference on appeal." State v. Wallace, 104 N.C.App. 498, 502, 410 S.E.2d 226, 228 (1991). In the case before us, the trial judge determined that respondents' substance abuse records were not relevant during the adjudication hearing. We agree.
Although the substance abuse records may be relevant to an adjudication of neglect in some instances where evidence of the respondents' substance abuse cannot otherwise be obtained, that is a different case than the one before us. In the case sub judice, DSS presented sufficient evidence of respondents' substance abuse without including respondents' substance abuse records. Furthermore, based upon the evidence presented by DSS, the trial court made findings regarding respondents' substance abuse and its impact on the welfare of the children. Specifically, the trial court found that there was "no substantial evidence of any connection between the substance abuse and domestic violence and the welfare of [the] two children." Also, the trial court found that respondents' issues were "being adequately addressed in the family setting at the present time."
In the case before us, the trial court found the evidence presented by DSS confirmed that both respondent-mother and respondent-father were substance abusers. The excluded records were additional evidence of respondents' substance abuse and only would have corroborated the evidence presented but did not provide additional evidence regarding the neglect and dependency of the children as the dissent concludes.
The records indicate respondent-father abused alcohol on a frequent basis and that he was diagnosed with alcohol dependence. However, the records do not indicate that the children suffered any harm or were in anyway neglected as a result of respondent-father's substance abuse. Further, the records do not indicate that the children were exposed to a substantial risk of harm due to the father's use of alcohol. The evidence in the records regarding respondent-mother indicates she had not kept her therapy appointments and she was involved in a number of harmful situations involving alcohol. However, there was no indication in the record that respondent-mother's alcohol abuse led to the children's neglect or that they were harmed in any manner, or that her use of alcohol exposed the children to a substantial risk of harm.
Because the records contained no evidence regarding the neglect or dependency of the children, the records were not relevant to the adjudication hearing. Thus, the trial court did not err by excluding the records when other evidence of respondents' substance abuse was presented and the records did not provide any additional evidence regarding the neglect of the children or a substantial risk of neglect.
We recognize that evidence of substance abuse and a parent's progress in treatment may be relevant in determining whether a child meets the definitions of neglect and dependency. See, e.g., In re L.W., 175 N.C.App. 387, 391-92, 623 S.E.2d 626, 628 (noting dependency exists when substance abuse problems render parent incapable of providing proper care and supervision), appeal dismissed and disc. review denied, 360 N.C. 534, 633 S.E.2d 818 (2006); In re E.C., 174 N.C.App. 517, 524, 621 S.E.2d 647, 653 (2005) (mother's attempt to care for child while intoxicated and failure to complete substance abuse program supported trial court's conclusion that mother neglected her child). See also In re J.B., 172 N.C.App. 1, 16-18, 616 S.E.2d 264, 274 (2005) (holding medical records detailing mother's substance abuse issues were admissible in neglect proceeding). However, the instant case is distinguishable from the above cited cases.
In E.C., this Court affirmed the trial court's order adjudicating a minor child neglected. This Court concluded that sufficient evidence had been presented to support the determination that respondent neglected the child, including evidence that the mother kept the child in a filthy room, would leave home several days at a time, and that when the mother returned, she would sleep for long hours and would not awaken when the child cried. E.C., 174 N.C.App. at 524, 621 S.E.2d at 653. In affirming the trial court's order, this Court considered evidence of the mother's substance abuse. However, the evidence as a whole showed that the mother, as *775 a result of her substance abuse, failed to provide "proper care, supervision or discipline" to the minor child and that the minor child was neglected. Although evidence of substance abuse was considered as a basis for determining that the minor child in E.C. was neglected, this Court reiterated that we have "`consistently required . . . there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide `proper care, supervision, or discipline.'" Id. (quoting In re Safriet, 112 N.C.App. 747, 752, 436 S.E.2d 898, 901-02 (1993)).
In addition, in In re Leftwich, 135 N.C.App. 67, 518 S.E.2d 799 (1999), the children were adjudicated neglected prior to the filing of the termination of parental rights proceedings. The ground for the adjudication of neglect was the respondent's failure to properly care for the children due to her alcoholism. The evidence supporting the adjudication of neglect showed that respondent's alcoholism affected the children's development. Id. at 72-73, 518 S.E.2d at 803. Specifically, neither the six-year-old child nor the three-year-old child was toilet-trained and both lacked age appropriate social skills. Id. at 73, 518 S.E.2d at 803. However, the adjudication of neglect was based upon the harm to the children as a result of respondent's substance abuse; it was not based solely upon respondent's substance abuse. This Court affirmed the Order terminating the respondent's parental rights because the mother failed to address her substance abuse issues. Id. at 72-73, 518 S.E.2d at 803.
Although DSS was able to offer evidence of the parents' substance abuse without access to these records, the question remains whether the failure to require production of the records and the exclusion of the records were prejudicial. DSS' evidence at the hearing indicated that respondent father occasionally abused alcohol and that respondent mother abused alcohol and prescription medication, had once cut her wrists while caring for the children, and periodically had engaged in domestic violence against respondent father. Based upon this evidence, the trial court found only that there had been "some evidence" of substance abuse by respondent father, that there was "no substantial evidence of any connection between the substance abuse and domestic violence and the welfare of [the] two children," and that the family's issues were "being adequately addressed in the family setting at the present time."
The standard of review on appeal is whether the trial court's findings are supported by clear and convincing evidence. N.C. Gen.Stat. § 7B-805 (2005). In addition, the findings must support the conclusions of law. In re Shepard, 162 N.C.App. 215, 221, 591 S.E.2d 1, 6 (2004). The burden of proof in an adjudicatory hearing lies with the petitioner to show by clear and convincing evidence that a minor child has been neglected. N.C. Gen.Stat. § 7B-805 (2005). If any competent evidence supports the trial court's findings, even if some other evidence supports contrary findings, the decision of the trial court must be left undisturbed. In re Helms, 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997).
A dependent juvenile is defined as one who is "in need of assistance or placement because the juvenile has no parent . . . responsible for the juvenile's care or supervision or whose parent . . . is unable to provide for the care or supervision [of the juvenile]." N.C. Gen.Stat. § 7B-101(9) (2005). A neglected juvenile is defined in part as one "who does not receive proper care, supervision, or discipline from the juvenile's parent . . .; or who lives in an environment injurious to the juvenile's welfare. . . ." N.C. Gen.Stat. § 7B-101(15) (2005). In addition, this Court has "`required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide "proper care, supervision, or discipline"' in order to adjudicate a juvenile neglected." Helms, 127 N.C.App. at 511, 491 S.E.2d at 676 (quoting Safriet, 112 N.C.App. at 752, 436 S.E.2d at 901-02).
In the case before us, the trial judge found no instances of neglect or harm to the children. Furthermore, the treatment records requested by DSS contained no evidence that actual harm to the children had occurred, or that the parents' substance abuse issues created a substantial risk of harm to the children. *776 More importantly, DSS failed to present other evidence that the children had been harmed because of respondents' substance abuse or that the children were exposed to a substantial risk of harm. We in no way contend that DSS was required to have shown that the children were actually harmed in order for the trial court to have found that they were neglected or dependent. However, DSS failed to present clear and convincing evidence that the parents' problems created a substantial risk of harm to the children, and we hold the subject records would not have aided DSS in satisfying its burden of proof. DSS failed to prove by clear and convincing evidence that respondents' home was not suitable for the children. Thus, the trial court did not err by dismissing the juvenile petitions.
For the foregoing reasons, the trial court did not err either by excluding respondents' substance abuse records when evidence of respondent's substance abuse had already been presented or by dismissing the juvenile petitions when DSS failed to present evidence that the children were neglected and dependent.
As a final matter, we note the parents have argued in their brief that this appeal should be dismissed because the record on appeal was not settled within the time limitations provided by the North Carolina Rules of Appellate Procedure. The parents filed a motion to dismiss the appeal on the same grounds in the trial court. The court denied the motion. The parents have not cross-appealed from that order and, therefore, the trial court's determination that appellants acted in a timely fashion is not properly before this Court. See State v. McCarn, 151 N.C.App. 742, 745-46, 566 S.E.2d 751, 753-54 (2002) (holding that the issue whether a trial court properly denied a motion to dismiss an appeal was not properly before this Court when the appellee only cross-assigned error rather than cross-appealing).[1]
Affirmed.
Judge CALABRIA concurs.
Judge GEER dissents in a separate opinion.
GEER, Judge, dissenting.
I respectfully dissent. The core issue in this appeal is whether the trial court properly denied petitioner's request for substance abuse recordswithout reviewing those recordson the ground that those records would only be relevant at the disposition stage of the hearing. It is well established that we review questions of relevance de novo. The question before this Court is whether the trial court erred as a matter of law in determining that the substance abuse records were not relevant at the adjudicative phase of the hearing.
In deciding this question, we must keep in mind the standard for determining whether substance abuse is relevant with respect to determinations of neglect and dependency. It has long been the law in North Carolina that we need not wait until a child is actually harmed to determine that he or she has been neglected. It is enough that "there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment. . . ." In re Safriet, 112 N.C.App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (emphasis added). The cases reiterating this "substantial risk" standard are numerous, as can be seen by shepardizing Safriet.
I believe the majority does not properly apply this standard within the context of N.C.R. Evid. 401, which provides: "`Relevant evidence' means evidence having any tendency to make the existence of any fact *777 that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Instead of determining whether the substance abuse records tend to make the existence of a substantial risk of harm more probable, the majority appears to make the ultimate finding that the records do not in fact prove a substantial risk of harm. Moreover, the majority opinion never appears to specifically address the relevancy of the documents to the issue of dependency, as apart from neglect. Because (1) I believe that the records are relevant, as defined by Rule 401, to both neglect and dependency, and (2) only the trial court may determine what factual findings should be made based on those records, I respectfully dissent.
With respect to the granting of the motion to dismiss, I believe that the majority opinion mistakes the issue and, as a result, ends up sitting as a trial panel. When the trial court concluded that there was insufficient evidence to support the petition's allegations, it did so without benefit of the substance abuse recordsrecords that in fact contradicted some of the trial court's findings of fact. The trial court's decision not to consider the records was based upon a misapprehension of law that such records generallyand not these specific recordswere not relevant at the adjudication stage. I believe that it is reasonably possible given the content of the records that the trial court could have reached a different decision with respect to the motion to dismiss. That question should be resolved by the trial court and not by this Court.

The Applicable Standard of Review
The first issue presented by this appeal is whether the trial court properly denied DSS' motion for production of the parents' substance abuse records. Without reviewing those records, the trial court declined to order their production or admit them into evidence, concludingbased solely on the arguments of counselthat the records went "more to disposition than to adjudication."
As the parties and the majority opinion acknowledge, this ruling was effectively a determination that the substance abuse records were not relevant to the adjudication phase of the hearing. Because the trial court had no knowledge of what was contained in those recordsand since they had not been produced, counsel could not have supplied any detailsthis ruling was based on a flat determination that substance abuse records are relevant only in the disposition phase.
The majority opinion, citing various opinions, "recognize[s] that evidence of substance abuse and a parent's progress in treatment may be relevant in determining whether a child meets the definitions of neglect and dependency." This assertion and those opinions readily demonstrate that the trial court erred in determining that substance abuse records go "more to disposition than to adjudication." Yet, the majority opinion does not address this specific error.
Although a trial court's rulings on relevancy "are given great deference on appeal," such rulings are "technically . . . not discretionary and therefore are not reviewed under the abuse of discretion standard." State v. Wallace, 104 N.C.App. 498, 502, 410 S.E.2d 226, 228 (1991), appeal dismissed and disc. review denied, 331 N.C. 290, 416 S.E.2d 398, cert. denied, 506 U.S. 915, 113 S.Ct. 321, 121 L.Ed.2d 241 (1992). See also Hales v. Thompson, 111 N.C.App. 350, 357, 432 S.E.2d 388, 393 (1993) ("A ruling on whether proffered evidence is relevant is not discretionary on the part of the trial judge, but will nevertheless be given great deference on appeal.").
In this case, the trial court reached its conclusion regarding relevance without ever looking at the records, which had been subpoenaed, to assess their content.[2] The trial court ultimately reviewed the records in connection with a request to settle the record on appeal and ordered that the records be made an exhibit to the record-essentially an offer of proof-so that this Court could review *778 them. Under this unusual set of circumstances, this Court is in a better position to determine the relevance of the records than the trial court because we have actually reviewed the records. As a result, the trial court's ruling should be entitled to little deference here.

Application of Rule 401
Although the majority opinion acknowledges, contrary to the ruling of the trial court, that substance abuse evidence may be relevant "in some instances" in determining neglect and dependency, the opinion holds that the disputed records are not relevant in this case because evidence of respondents' substance abuse could "otherwise be obtained." Notably, the majority opinion cites no authority to support its holding. I know of no case holding that records are not relevantthe issue heresimply because evidence to the same effect may be obtained elsewhere. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. I cannot see how the availability of other evidence can affect application of Rule 401.[3]
With respect to other cases finding substance abuse evidence to be relevant, the majority notes that "the evidence as a whole," in those cases, presented a more compelling case for neglect. As with the availability of other evidence, I fail to see what bearing the assessment of the record "as a whole" has on whether a specific piece of evidence is relevant or not. To apply the relevance standard used by the majority opinion, a trial court would have to wait to the end of a hearing and assess "the evidence as a whole" before deciding whether any particular evidence was relevant.
The curious approach adopted by the majority opinion is the result of its failure to apply the definition of "relevant evidence" in Rule 401 to determine whether the records tend to make the existence of any fact that is of consequence to the action more or less probable. I believe this part of the majority opinion's analysis has no bearing on the relevance of the records, but rather goes to the question whether the failure to require production of those records was prejudicial.
Applying Rule 401's standard, it is apparent that the records in the present case tend to make more probable the facts that respondents had very substantial substance abuse problems, had severe difficulties coping as a family, and were making no progress with respect to treatment. I would further conclude that these facts were of consequence, under well established authority of this Court (including the cases relied upon by the majority opinion), to the question whether the parents' substance abuse was creating a substantial risk of harm to the children. See, e.g., In re J.S.L., 177 N.C.App. 151, 155-57, 628 S.E.2d 387, 390 (2006) (holding medical records detailing mother's substance abuse issues were admissible in neglect proceeding); In re E.C., 174 N.C.App. 517, 524, 621 S.E.2d 647, 653 (2005) (mother's attempt to care for child while intoxicated and her failure to complete substance abuse program supported trial court's conclusion that mother neglected her child).
The excluded records contain the conclusions of a certified clinical addictions counselor that the father showed a "high probability" of substance abuse problems and was alcohol and cannabis dependent. The counselor further stated that the father had shown "poor coping skills and poor judgment leading to his current situation" regarding his marriage and his children. In addition, the records indicate that the father acknowledged (1) that the parents were "drinking to excess and arguing frequently," (2) that he was "using [alcohol] at least every other day and sometimes daily up to a 6 pack of beer," (3) that he was using marijuana at least 4 to 5 days out of the week, and (4) that he had previously used cocaine.
With respect to the mother, the records indicate that she had not kept appointments for therapy and that she "continued to have a number of crisis [sic] which were alcohol related, including an arrest for assaulting her *779 husband and the arresting officer." Further, the records indicated that she needed "more intensive treatment" to manage her alcohol use, including possible admission as an inpatient.
Although such records may not be dispositive, surely they are pertinent to a trial court's determination whether a child is at substantial risk of harm. If substance abuse gives rise to a substantial risk of harm, then a child is living "in an environment injurious to the juvenile's welfare" and is neglected under N.C. Gen.Stat. § 7B-101(15) (2005).
A father's poor coping skills and judgment regarding his children, his extensive substance abuse and dependency, and a mother's need forand rejection ofintensive treatment, including inpatient treatment, despite "a number of" alcohol-related crises, including violence against her husband and a police officer, make the existence of a substantial risk of harm "more probable . . . than it would be without the evidence." N.C.R. Evid. 401. See, e.g., In re K.D., 178 N.C.App. 322, ___, 631 S.E.2d 150, 155 (2006) (evidence that mother struggled with parenting skills, domestic violence, and anger management supported trial court's finding of likelihood of future neglect); In re Leftwich, 135 N.C.App. 67, 72-73, 518 S.E.2d 799, 803 (1999) (upholding termination of parental rights for neglect when, among other things, parent did not correct substance abuse problems); In re Helms, 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997) (evidence that child had "extended contact" with substance abusers supported trial court's finding that child was "exposed . . . to risk").
It should also be noted that the majority does not address the dependency ground apart from the neglect ground. N.C. Gen. Stat. § 7B-101(9) defines a dependent juvenile as "[a] juvenile . . . whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement." While in initial adjudications, such as this one, there is no specification as to the source of the parent's inability, in termination of parental rights proceedings, the statute expressly provides that "[i]ncability under this subdivision may be the result of substance abuse. . . ." N.C. Gen.Stat. § 7B-1111(a)(6) (2005).
The issue with respect to dependency is whether a parent's substance abuse renders a parent unable to provide care or supervision to the child. Poor coping skills and judgment, substantial substance abuse, alcoholic crises resulting in domestic violence, and an unwillingness to obtain treatment, including needed inpatient treatment, may call into doubt the parents' ability to provide necessary care and supervision. See, e.g., In re L.W., 175 N.C.App. 387, 391, 623 S.E.2d 626, 628 (noting dependency exists when substance abuse problems render parent incapable of providing proper care and supervision), appeal dismissed and disc. review denied, 360 N.C. 534, 633 S.E.2d 818 (2006).
In short, I find inconceivable any suggestion that these records were irrelevant to the adjudication phase issues. Nevertheless, because DSS was able to offer some evidence of respondents' substance abuse even without access to these records, the question remains whether the failure to require production of the records and their subsequent exclusion was prejudicial. With respect to this issue, the majority concludes that DSS has failed to establish prejudice because the excluded records "only would have corroborated the evidence presented." I disagree.
DSS' evidence at the hearingwithout the disputed recordsindicated that the father occasionally abused alcohol and that the mother abused alcohol and prescription medication, had once cut her wrist while caring for the children, and had periodically engaged in domestic violence against the father. As noted by the majority, the trial court, based on this evidence, found that there had been "some evidence" of substance abuse by the father, that there was "no substantial evidence of any connection between the substance abuse and domestic violence and the welfare of the[] two children," and that the family's issues were "being adequately addressed in the family setting at the present time."
The disputed records, on the other hand, indicated that the father regularly abused alcohol and marijuana, probably had a chemical dependency, and lacked coping skills and judgment with respect to his children and wifeinformation calling into question his *780 ability to parent in a way not suggested by the testimony standing alone. With respect to the wife, according to the disputed records, her substance abuse was so severe that she required intensive treatment, possibly including inpatient treatment, which necessarily would have interfered with her ability to care for her children. Further, she had a number of alcohol-related crises and not only assaulted her husband, but also a police officer. The wife's need for intensive care, as well as her alcohol-related crises, strongly suggestcontrary to the trial court's finding made without benefit of these records-that the wife's issues, at least, were not being adequately addressed within the family setting.
I, therefore, disagree with the majority that the records were merely corroborative of the existing testimony. I believe the records suggested substantially greater problems and that this evidence reasonably could have caused the district court to reach a different conclusion in ruling on the motion to dismiss. The trial court's error in denying the motion for production and its exclusion of the evidence sight unseen was, therefore, prejudicial error.

Motion to Dismiss
DSS also contends that the trial court erred in granting respondents' motion to dismiss the petitions at the close of DSS' evidence. Although dismissal under Rule 41(b) falls within the discretion of the trial court, it should nevertheless be granted only in "`the clearest cases.'" In re Oghenekevebe, 123 N.C.App. 434, 437, 473 S.E.2d 393, 396 (1996) (quoting In re Becker, 111 N.C.App. 85, 92, 431 S.E.2d 820, 825 (1993)).
I believe the majority errs in addressing the merits of the order dismissing the petitions. Our appellate courts have regularly recognized that discretionary rulings made under a misapprehension of the law should be reversed for reconsideration under the correct legal principles. See Wilson v. McLeod Oil Co., 327 N.C. 491, 522-23, 398 S.E.2d 586, 603 (1990) (remanding trial court's discretionary ruling denying motion to amend, made under misapprehension of the law, for reconsideration); Ledford v. Ledford, 49 N.C.App. 226, 234, 271 S.E.2d 393, 399 (1980) (reversing as an abuse of discretion trial court's discretionary ruling, made under a misapprehension of the law, denying motion to amend).
Because the trial court granted the motion to dismiss under the mistaken belief that the substance abuse records were not relevant at the adjudication stagea legal errorI would reverse the trial court's dismissal of the DSS petitions and remand for reconsideration of the motion to dismiss so that the erroneously excluded medical records could be weighed as well. Contrary to the majority opinion, I do not believe that we can, given the evidence in this case, forecast what the trial court would have done had the court considered the substance abuse records in connection with the hearing testimony. I prefer not to speculate and would let the trial court determine on remand whether the case qualifies as one of "the clearest cases" and, therefore, merits a Rule 41(b) dismissal.
NOTES
[1] With respect to the parents' suggestion that we disregard the medical records because of the untimeliness of the trial court's order settling the record, we note that DSS, the appellant, proposed to include the records in the record on appeal, but the parents objected. Rule 11(c) of the North Carolina Rules of Appellate Procedure places the burden of seeking settlement of the record on the party who "contends that materials proposed for inclusion in the record . . . were not filed, served, submitted for consideration, admitted, or made the subject of an offer of proof. . . ." In this case, the parents bore the burden under Rule 11(c) to "in writing request the judge from whose judgment, order, or other determination appeal was taken to settle the record on appeal." N.C. R.App. P. 11(c) (2006). The parents, however, failed to take any such action.
[2] The better practice would have been for the trial court to review the limited number of records involved prior to making a ruling on relevance. See 1 Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 103.02[7], at 103-15 (9th ed.2006) (noting that, in addition to its function on appeal, an offer of proof at trial "informs the Judge what the proponent expected to prove by the evidence, thereby enabling the Judge to determine whether the evidence would be admissible for any purpose").
[3] The availability of other sources of evidence might be pertinent to a decision barring production of confidential records for other reasons, but the lone issue in this case is whether the records were relevant.