IN THE MATTER OF: A.N.J.-H. and L.A.J.-H., Minor Children.
No. COA08-740
Court of Appeals of North Carolina
Filed December 2, 2008
This case not for publication
Elizabeth Myrick Boone for petitioner-appellant.
Katherine Freeman for respondent-appellee mother.
Pamela Newell Williams for Guardian ad Litem.
GEER, Judge.
Petitioner Gaston County Department of Social Services ("DSS") appeals from the trial court's orders dismissing the petitions to terminate respondent mother's parental rights as to her two minor children. We agree with DSS that the trial court erred by making findings of fact inconsistent with those in prior orders that respondent did not appeal and that were, therefore, binding. Since review of the order and transcript indicates that those findings played a substantial role in the decision reached by the trial court, we must vacate the trial court's dismissals and remand for further findings of fact.

Facts
Respondent is the mother of L.A.J.-H. ("Larry"), age four, and A.N.J.-H. ("Abbey"), age two.[1] On 4 February 2006, respondent, who was asleep in bed, was awoken by the sound of two-month-old Abbey crying. Abbey's father was holding her, and her head was swollen on one side. Respondent and the father took Abbey to the hospital. When asked what had caused the injury, respondent responded that she did not know. She mentioned, however, that her nephew had accidentally dropped a toy truck on Abbey's head earlier that day. Doctors determined that Abbey had two skull fractures and a subdural hematoma on the left side of her head. The medical staff did not believe that Abbey's injuries were consistent with respondent's report regarding the toy truck.
A social worker from DSS conducted a home visit two days later on 6 February 2006. Based on the social worker's report, DSS filed a petition on 7 February 2006 alleging that both juveniles were abused or neglected as defined by N.C. Gen. Stat. § 7B-101(1) and (15) (2007). The petition alleged that Abbey had suffered an injury inconsistent with respondent's explanation, that DSS could not determine the cause of Abbey's injury, and that it thus could not assure the juveniles' safety in respondent's home. The petition further alleged that the living conditions in the house were hazardous due to clutter, debris, numerous roaches throughout the home, and old food lying out in the kitchen area. After conducting an adjudication hearing on 27 June 2006, the trial court entered an order on 31 July 2006 adjudicating Larry and Abbey to be neglected juveniles based on both the injury to Abbey and the conditions of the home. The trial court did not decide whether the children were abused.[2] The trial court deferred the dispositional phase of the hearing so that a Parent-Family Assessment could be completed.
In that Assessment, dated 27 July 2006, Scott Hammontree, M.A., L.P.C., reported that respondent did not believe that the father had abused Abbey, although respondent also said that she visited the father in jail only because she felt obligated to keep him informed about the children. Mr. Hammontree concluded that respondent would benefit from counseling about the conflict between protecting her children and yet continuing to have contact with the man who abused Abbey. He recommended that respondent be referred for intensive clinical work including Individual Therapy, Family Therapy, and Case Management/Community Support Services.
The trial court entered its disposition order on 21 November 2006, adopting a permanent plan of adoption. In a Review and Permanency Planning Order entered 19 February 2007, however, the trial court changed the permanent plan to a concurrent plan of reunification, guardianship with a court-appointed guardian, and adoption. In that same order, the trial court found that respondent had completed some parenting classes, but had not followed through with the court-ordered recommendations; had not obtained independent housing or stable employment; and had not paid child support. The permanent plan was changed again, in a Review and Permanency Planning Order entered 12 June 2007, to adoption alone, based on the trial court's findings that although respondent had completed some parenting classes, obtained independent housing, and paid child support, respondent continued to fail to go to therapy and had attended only some of the juveniles' medical and therapy appointments. The court continued the permanent plan as adoption in its orders entered 30 July 2007 and 8 October 2007.
On 29 August 2007, DSS filed petitions to terminate respondent's and the father's parental rights as to Larry and Abbey. The petitions alleged two grounds for termination as to respondent: (1) that respondent had neglected the children, and there is a substantial likelihood of future neglect; and (2) that respondent had willfully left the juveniles in foster care for more than 12 months without showing to the satisfaction of the court that reasonable progress has been made in correcting those conditions that led to the removal of the juveniles. After a termination of parental rights ("TPR") hearing on 12 March 2008, the trial court entered an order on 4 April 2008 dismissing the petitions as to respondent. The trial court proceeded with respect to the father and ultimately terminated his parental rights. DSS timely appealed to this Court from the trial court's orders dismissing the petitions with respect to respondent. The father is not a party to this appeal.

Discussion
Although not addressed by the parties, we first note that the record in this case raises a question regarding subject matter jurisdiction. Subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel and thus may be considered by a court for the first time on appeal. In re T.R.P., 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006).
Pursuant to N.C. Gen. Stat. § 7B-1106 (2007), summonses were issued in this case by the clerk of court on 29 August 2007 and were directed to respondent, the juveniles' father, and each juvenile through DSS and the guardian ad litem. A deputy sheriff personally served respondent with the summons on 9 September 2007 and personally served the juveniles through DSS on 17 December 2007 and through their guardian ad litem on 18 December 2007. The time between issuance of the summonses and their service on the juveniles was approximately 111 days. The record does not indicate that DSS obtained any endorsement of the original summons or had an alias and pluries summons issued under Rule 4(d)(1) or (2) of the Rules of Civil Procedure.
In In re A.B.D., 173 N.C. App. 77, 87-88, 617 S.E.2d 707, 714 (2005), this Court held that when the petitioner failed to serve the respondent with a summons within the time permitted for service and failed to obtain an endorsement, an alias and pluries summons, or an extension of the time to serve the summons based on excusable neglect, the trial court lacked subject matter jurisdiction to enter an order terminating the respondent's parental rights. A.B.D. would suggest that this Court lacked subject matter jurisdiction.
Subsequently, however, in In re S.J.M., 184 N.C. App. 42, 49, 645 S.E.2d 798, 802 (2007), another panel of this Court addressed the situation in which a summons had been issued, but not served and held that "subject matter jurisdiction ha[d] been validly obtained" when the respondent made a general appearance in the proceedings that resulted in the termination of the respondent's parental rights, despite the respondent's having never been served with the issued summons. The dissent in S.J.M. relied exclusively on A.B.D. in asserting that no subject matter jurisdiction existed. The Supreme Court, however, affirmed the majority. See 362 N.C. 230, 657 S.E.2d 354 (2008) (per curiam). Because we cannot see a meaningful distinction between an issued summons not being served and a summons being served late, we conclude that the trial court had subject matter jurisdiction in this case to hear DSS' petitions.
With respect to the merits of this appeal, DSS first contends that the trial court "did not consider the appropriate 12 month period in making its findings of fact and conclusions of law" regarding whether respondent demonstrated reasonable progress under N.C. Gen. Stat. § 7B-1111(a)(2) (2007). DSS contends that "[t]he relevant time frame is the twelve-month period preceding the date of filing of the petition for termination of parental rights, here, from 29 August 2006 to 29 August 2007." According to DSS, the trial court should only have considered the progress made during the 12 months prior to the filing of the petition. DSS has, however, mistaken the law.
N.C. Gen. Stat. § 7B-1111(a)(2) provides that parental rights may be terminated if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." A previous version of the statute, however, contained language limiting consideration of reasonable progress to "within 12 months." As our Supreme Court explained:
[D]uring the 2001 session of the General Assembly, the legislature struck the "within 12 months" limitation from the existing statute detailing the requirements for establishing grounds for the termination of parental rights. Thus, under current law, there is no specified time frame that limits the admission of relevant evidence pertaining to a parent's "reasonable progress" or lack thereof.
In re Pierce, 356 N.C. 68, 75 n.1, 565 S.E.2d 81, 86 n.1 (2002) (internal citations omitted); see also In re C.L.C., K.T.R., A.M.R., E.A.R, 171 N.C. App. 438, 447, 615 S.E.2d 704, 709 (2005) ("The focus is no longer solely on the progress made in the 12 months prior to the petition."), aff'd per curiam in part, disc. review improvidently allowed in part, 360 N.C. 475, 628 S.E.2d 760 (2006). In addition, the trial court is not limited just to consideration of events before the filing of the petition. To the contrary, grounds exist under N.C. Gen. Stat. § 7B-1111(a)(2) if, "as of the time of the hearing, as demonstrated by clear, cogent and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child." In re O.C. & O.B., 171 N.C. App. 457, 465, 615 S.E.2d 391, 396 (emphasis added), disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005). Thus, the trial court was required to consider whether respondent made reasonable progress between the date the children were removed from her care through the date of the TPR hearing.
DSS next challenges certain of the trial court's findings of fact as effectively overruling prior decisions relating to the children that were not appealed.[3] We agree that the trial court's order demonstrates a mistaken belief that it could reconsider the issue of prior neglect and make findings of fact inconsistent with the prior order adjudicating the juveniles as neglected.
In the initial adjudication order, which was admitted into evidence at the termination hearing, the trial court found, based on "clear, cogent and convincing evidence":
The juvenile, [Abbey], is currently at Carolinas Medical Center due to two skull fractures to each side of the head and a subdural hematoma to the left side of the head. The respondent mother, K.P., indicated to hospital staff that another child in the home dropped a wooden truck that was approximately 12 inches long on the head of the juvenile, [Abbey], on Saturday, 2/04/06. The medical team at Carolinas Medical Center do [sic] not feel that [Abbey]'s injuries are consistent with the mother's explanation. At this time, [DSS] can not [sic] determine who caused the injuries to the juvenile, [Abbey]; thus the safety of the juveniles in the home can not [sic] be assured. On 2/06/06, Social Worker made a home visit to the residence and observed the condition of the home to be hazardous in that the home was cluttered throughout. The juveniles' beds were covered with clothing and Social Worker had difficulty walking through the residence due to all the debris (toys, clothes, tables, etc.) throughout the home. Social Worker also observed numerous roaches throughout the home and old food lying out in the kitchen area.
Although the DSS petition had sought an adjudication of both abuse and neglect, the trial court, based on this finding, concluded that "[t]he juveniles are `Neglected Juveniles' as defined in N.C.G.S. §7B-101(15) . . . ."
Nevertheless, the trial court, in the order dismissing the TPR petitions,[4] made the following findings of fact relating to the removal of the children from respondent's custody:
45. The incident that caused the juveniles to be placed in the custody of [DSS] is the assault on the juvenile, [Abbey]. The assault was committed by the biological father, G.H., when in a fit of anger because the juvenile was crying, he hit the two month old juvenile in the head with his fist causing serious bodily injury and brain trauma. The father later confessed to this crime, pled guilty to this crime, and is serving an active sentence in prison for this crime. The father is to be deported upon his release from prison and will not be in the juveniles' home in the future.
. . . .
48. The Petitioner presented NO EVIDENCE, that during the time the juveniles lived with the Respondent before being placed in the custody of [DSS], that the juveniles did not receive proper care, supervision, or discipline from the Respondent; or that the Respondent did not provide necessary medical care to the juveniles.
. . . .
51. The Petitioner presented one photograph, Exhibit 6, showing clothing on the juveniles' bed on February 6, 2006, when the Social Worker made a home visit. The Petitioner presented NO photographs of the alleged clutter throughout, nor of the alleged debris (toys, clothes, tables, etc.) throughout, nor of the alleged numerous roaches throughout, nor of the alleged old food lying out in the kitchen on the same date. The Social Worker who made the home visit on February 6, 2006, was not a witness. The Court was not given clear, cogent, and convincing evidence to be able to determine the extent of any hazard to the juveniles created by any of these alleged conditions or whether such conditions created an environment injurious to the juveniles' welfare.
52. The Petitioner presented NO EVIDENCE to show Respondent's responsibility for the creation or existence of any of the alleged conditions during the February 6, 2006, home visit. Respondent was living in her mother's residence with four other adults and three children.
The trial judge, in the TPR proceeding, thus recast the initial adjudication as one based on abuse and not neglect, even though the sole basis for the initial adjudication was neglect. While the trial judge conducting the initial adjudication found neglect in part based on the conditions in the home, the trial judge hearing the TPR proceeding essentially declined to find evidence of any problem with the conditions in the home and ruled that they should not be a basis for a finding that respondent had previously subjected the children to neglect or did not provide the children with proper care.
The trial judge in the TPR proceeding was not, however, free to revisit whether the children were neglected at the time DSS obtained custody based both on the head injury to Abbey and the conditions in the home since respondent did not appeal the initial adjudication order. This Court confronted a similar situation in In re Wheeler, 87 N.C. App. 189, 360 S.E.2d 458 (1987), with the respondent in that case contending that the trial court, in the TPR proceeding, was not bound by an initial adjudication order finding that his children were abused and neglected. This Court held: "Because no appeal was taken or other relief sought from the [adjudication] order, it remained a valid final order which was binding in the later proceeding on the facts regarding abuse and neglect which were found to exist at the time it was entered." Id. at 194, 360 S.E.2d at 461. The Court explained that "[t]he doctrine of collateral estoppel operates to preclude parties `from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination.'" Id. (quoting King v. Grindstaff, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973)). See also In re N.G., 186 N.C. App. 1, 4, 650 S.E.2d 45, 48 (2007) (holding that collateral estoppel precluded respondents from litigating question whether they caused child's injuries because of findings in prior order), aff'd, 362 N.C. 229, 657 S.E.2d 355 (2008); In re Wilkerson, 57 N.C. App. 63, 70, 291 S.E.2d 182, 186 (1982) (holding that collateral estoppel rendered prior orders binding in TPR proceeding with respect to factual findings regarding what conditions existed at time prior orders were entered).
Accordingly, the prior adjudication order conclusively established that Larry and Abbey were neglected juveniles both because of Abbey's head injury and the home conditions, and, therefore, precluded the trial court from finding in the TPR proceeding that the home conditions did not subject the juveniles to neglect. A review of the order and the transcript of the TPR hearing reveals that the trial court's dismissal of the TPR petitions was affected by its belief  contrary to the prior order  that the only reason the children were in DSS' custody was the physical abuse of Abbey by her father. The trial judge stated:
THE COURT: I guess I'm torn on this issue, and maybe I shouldn't being [sic] saying this with the record going. I'm torn on this issue that, ultimately, I don't know that I would feel comfortable, with [G.H.] harming the child, that somehow she loses and her rights are terminated. I have a feeling if we get into the best interests stage, there's probably going to be a lot of testimony as to why it's the best interests for these children. It just  there's a part of me that says it's not right that he harms her in the middle of the night and she ends up with her rights terminated.
The trial judge's personal conviction that the father's abuse should not result in respondent's losing her parental rights permeates his entire order and, ultimately, his decision to dismiss the petitions. The judge's findings of "NO EVIDENCE" of prior neglect by respondent are directly contrary to the prior adjudication of neglect.[5] We must, therefore, vacate the order and remand for further findings of fact.
We note further that another finding of fact also seems to effectively overrule prior rulings of other district court judges. After describing therapy recommended in a Parent-Family Assessment of Scott Hammontree, M.A., L.P.C., the trial judge, in a finding in the dismissal order, stated: "It is unclear to the Court exactly what therapy the Respondent needed to address a fact situation where the father of the child harmed the child." The trial judge's dismissal of the need for therapy overruled an earlier trial judge's determination that such therapy was in fact necessary. In the dispositional order, following the initial adjudication of neglect, the trial judge found that "[r]espondent/mother and the maternal grandmother would benefit from Individual and Family Therapy in order to define their roles [as] caregivers." The need for therapy was then re-affirmed in subsequent orders. It is apparent that the TPR trial judge's view of the lack of any need for therapy was grounded in his assumption that respondent was not responsible for any of the neglect. He was not, however, entitled to determine, based on his view of the events in 2006, that the ordered therapy was unnecessary when the trial judge at that time had determined that therapy was in fact necessary. One district court judge cannot overrule another district court judge. Madry v. Madry, 106 N.C. App. 34, 38, 415 S.E.2d 74, 77 (1992).[6]
DSS contends that other findings of fact of the trial court were not supported by evidence. It is well established that "[i]f any competent evidence supports the trial court's findings, even if some other evidence supports contrary findings, the decision of the trial court must be left undisturbed." In re E.P., M.P., 183 N.C. App. 301, 306, 645 S.E.2d 772, 775, aff'd, 362 N.C. 82, 653 S.E.2d 143 (2007).
We first agree with DSS that the following findings of fact regarding the juveniles' foster mother's reported desire to adopt Larry and Abbey are unsupported by any competent evidence. The court found:
67. The foster mother, a [DSS] employee, wants to be able to adopt the juveniles if Respondent's parental rights are terminated. She has [sic] incentive to make sure Respondent is viewed in the worst possible light.
68. The [DSS] witnesses' testimony and attitude during their testimony create the impression that, despite any progress by Respondent, no progress will be enough to satisfy them that custody should be returned to the Respondent. This is a cause of concern to the Court given the fact that the prospective adoptive mother of the juveniles, should Respondent's parental rights be terminated, is an employee of another [DSS].Nowhere in the record in this case is there any evidence to support these findings. Some evidence relating to the foster mother's intent to adopt the juveniles was admitted during the father's disposition hearing in which the trial court terminated his parental rights. It was, however, improper for the trial court to rely in its findings of fact dismissing DSS' TPR petitions as to the mother on evidence presented in a subsequent disposition hearing relating only to the father. We are concerned that the trial court's credibility and weight determinations regarding the evidence presented in the mother's hearing were affected by evidence presented in a subsequent, unrelated hearing.
In addition, the trial court found that "[t]he father is to be deported upon his release from prison and will not be in the juveniles' home in the future." This finding ultimately formed part of the basis for the trial court's conclusion that there is not a substantial likelihood that the neglect arising from the father's abusive act would occur in the future. The guardian ad litem testified that respondent had talked about filling out immigration papers so that the father could stay in the United States. The guardian ad litem also reported that the father had said he expected to be deported upon release, but he had talked with respondent about moving to Mexico to be with him. The record contains no evidence that the father would in fact be deported upon release apart from the father's reported expectation.
DSS also challenges the following finding of fact:
Petitioner alleges that the Respondent does not understand and cannot meet the health and medical needs of the juveniles, because of her inconsistent attendance at the juveniles' medical appointments. Respondent knows the medical problems the juveniles have. Petitioner presented NO EVIDENCE that Respondent has ever been given any medical reports about the children's health and medical needs. When Respondent was told that certain play activity was not appropriate, she ceased that activity. When Respondent was asked to stop bringing sugar based foods to visitation for the children, she started bringing healthier, more nutritious foods.
While respondent did present evidence that supports this finding of fact, the trial court's findings do not specifically address DSS' contention that respondent does not understand and cannot meet the medical needs of the children.
The fact that respondent may know the children's medical problems does not address whether she understands those problems or her children's medical needs. DSS presented evidence that respondent did not believe Abbey needed speech therapy because "[y]ou cannot make a child talk if she don't want to talk." Although sign language was necessary to communicate with Abbey, respondent did not learn sign language. When asked about her children's health care needs, respondent said that "[e]very child basically has the same health needs." Although Abbey has weakness on her right side, respondent told the guardian ad litem that Abbey could use her right arm, but just chose not to do so. Respondent has presented contrary evidence. On remand the trial court should address not only whether respondent knows the medical conditions of her children, but resolve the conflict in the evidence as to whether she understands those conditions and her children's needs. Finally, we note that the trial court made a significant number of findings stating that DSS presented "NO EVIDENCE" as to the factual issue that was the subject of the finding. We agree with DSS that it presented some evidence on most of these issues. For example, the trial court found that "Petitioner produced NO EVIDENCE of [copies of the written notices] or any other notice to Respondent as to scheduled [medical] appointments for the Court to determine that Respondent had been informed of scheduled appointments sufficiently in advance." (Emphasis added.) DSS, however, presented competent oral testimony of a DSS social worker regarding both oral and written notice that was provided to respondent. While respondent presented contrary evidence on the issue of notice, as well as other findings of fact reciting "NO EVIDENCE," we cannot be assured that the trial court fairly considered the DSS evidence in light of its finding that there was "NO EVIDENCE" at all. In making its new findings of fact on remand, the trial court must consider all of the evidence, although it is not required to make the findings of fact sought by DSS.
Because we are remanding for further findings of fact, we need not address the trial court's conclusions of law. We leave to the discretion of the trial court whether to take additional evidence regarding the allegations in the petition.
Vacated and remanded.
Judges HUNTER and ARROWOOD concur.
Report per Rule 30(e).
NOTES
[1] The pseudonyms "Larry" and "Abbey" are used throughout the opinion to protect the privacy of the children and for ease of reading.
[2] The father was charged with felony child abuse resulting in serious injury. The father subsequently admitted to hitting Abbey in the head with his fist because she was crying and would not take her bottle.
[3] The trial court, in its order of dismissal, specifically incorporated the underlying juvenile files into the record in this case.
[4] Different judges presided over the initial adjudication hearing and the TPR hearing.
[5] The trial judge's suggestion that only physical abuse was at issue is also inconsistent with the dismissal order's finding that neglect had been substantiated in August 2004 based on the conditions in the home at that time. Larry was removed from the home while it was cleaned.
[6] We also note that to the extent the trial court believed that respondent did not now need therapy, no expert testimony or other evidence was submitted at the hearing that would support such a finding.