HUNTER, JR., Robert N., Judge.
*352 Respondent-mother appeals from orders adjudicating her child K.J.B. ("Kenneth")[1] to be a neglected juvenile and placing him in the custody of Rockingham County Department of Social Services ("DSS"). We reverse the trial court.
Kenneth was born in November 2014. Shortly after Kenneth's birth through early December 2014, Respondent and Kenneth lived with Respondent's cousin, Ms. Reynolds.[2] On the night of 9 December 2014, Ms. Reynolds returned home from work to find Respondent and Respondent's boyfriend passed out nude on the couch. Empty beer bottles and cans were laying in the living room and kitchen, and a table *353 was broken. Ms. Reynolds tried to awaken the couple for several minutes, and when the couple woke up, Ms. Reynolds made them leave the house for the night. When Ms. Reynolds asked them where Kenneth was, Respondent stated she knew where he was, but would not tell Ms. Reynolds with whom.
The following morning at 6:00 a.m., Kenneth's babysitter appeared at Ms. Reynolds's house with Kenneth. She stated she was looking for Respondent. Ms. Reynolds took Kenneth and went to her sister's house. At 7:00 a.m., Respondent went to Ms. Reynolds's sister's house with a friend, and demanded they give her Kenneth. Respondent's friend pried Kenneth from Ms. Reynolds's arms, and Respondent and her friend left the house with Kenneth.
On 10 December 2014, DSS filed a juvenile petition alleging Kenneth was neglected and dependent. The same day, a non-secure custody order was entered placing Kenneth in DSS's custody. Following a hearing, the trial court entered an order 5 November 2015 and adjudicated Kenneth as neglected, but did not conclude Kenneth was a dependent juvenile. On 5 November 2015, the trial court entered a separate dispositional order and gave DSS continual custody of Kenneth. Respondent timely appealed from the trial court's orders.
Respondent argues the trial court erred in concluding Kenneth was neglected. We agree.
On appeal, an adjudication order is reviewed to determine "(1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." In re T.H.T. , 185 N.C.App. 337, 343, 648 S.E.2d 519, 523 (2007) (citations, quotation marks, and brackets omitted), modified and aff'd , 362 N.C. 446, 665 S.E.2d 54 (2008). Findings supported by clear and convincing evidence "are binding on appeal, even if the evidence would support a finding to the contrary." Id. at 343, 648 S.E.2d at 523. Unchallenged findings are binding on appeal. In re A.R. , 227 N.C.App. 518, 520, 742 S.E.2d 629, 631 (2013). Conclusions of law are reviewable de novo. In re P.O. , 207 N.C.App. 35, 41, 698 S.E.2d 525, 530 (2010) (internal quotation marks and citation omitted).
North Carolina law defines a "neglected" juvenile as follows:
*518 A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent ... or who lives in an environment injurious to the juvenile's welfare.... In determining whether a juvenile is a neglected juvenile, *354 it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen. Stat. § 7B-101(15) (2015).
"In order to adjudicate a child to be neglected, the failure to provide proper care, supervision, or discipline must result in some type of physical, mental, or emotional impairment or a substantial risk of such impairment." In re C.M. , 183 N.C.App. 207, 210, 644 S.E.2d 588, 592 (2007) (citation omitted). Similarly, in order for a court to find that the child resided in an injurious environment, evidence must show that the environment in which the child resided has resulted in harm to the child or a substantial risk of harm. In re Helms , 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997). A trial court's failure to make specific findings regarding a child's impairment or risk of harm will not require reversal where the evidence supports such findings. In re Padgett , 156 N.C.App. 644, 648, 577 S.E.2d 337, 340 (2003).
Respondent contends the evidence introduced at the hearing did not demonstrate Kenneth suffered harm or was at a substantial risk of suffering harm, and that, to the extent the trial court found harm or a substantial risk of harm to Kenneth, those findings lacked evidentiary support and could not support the conclusion that Kenneth is a neglected juvenile. To this end, Respondent contends findings of fact eleven and twelve are unsupported by clear and convincing evidence. The challenged findings state, in pertinent part:
11. ... [Respondent] acknowledged that a child died of unknown causes while in her care in Rockingham County, North Carolina.
12. [Kenneth] is a neglected juvenile because his mother has not provided proper care and he has resided in an injurious environment with her. After substance abuse led to termination of her parental rights of two other children, [Respondent] has continued to drink alcohol to excess. [Respondent's] substance abuse problem prevents her from safely caring for [Kenneth] at this time.
As an initial matter, the provision in finding twelve that Kenneth "is a neglected juvenile" is actually a conclusion of law and will be treated *355 as such on appeal. See In re Helms , 127 N.C.App. at 510, 491 S.E.2d at 675-76.
We agree the statement in finding eleven regarding the death of a child while in Respondent's care is not supported by clear and convincing evidence. First, no evidence was presented regarding where the child died. Second, the evidence at the hearing showed the child died of Sudden Infant Death Syndrome ("SIDS"), not from unknown causes. Third, Respondent did not stipulate that these statements were true. We disregard this unsupported finding for purposes of our review.[3]
The statements in finding of fact twelve that Respondent "has not provided proper care and [Kenneth] has resided in an injurious environment with her," and that Respondent's "substance abuse problem prevents her from safely caring for [Kenneth] at this time" are not supported by clear and convincing evidence. Assuming arguendo that the evidence supported the finding that Respondent continued to have a substance abuse problem, there was a lack of clear and convincing evidence that Respondent's substance abuse had an adverse impact on Kenneth's well-being.
In In re E.P. , 183 N.C.App. 301, 645 S.E.2d 772, aff'd per curiam , 362 N.C. 82, 653 S.E.2d 143 (2007), this Court held a parent's substance abuse problem alone could not support an adjudication of neglect.
*519 Id. at 304-05, 645 S.E.2d at 774. In so holding, the Court distinguished In re Leftwich , 135 N.C.App. 67, 73, 518 S.E.2d 799, 803 (1999), in which the evidence showed the mother's alcoholism resulted in her children lacking age-appropriate social skills and toilet training. In re E.P. , 183 N.C.App. at 306, 645 S.E.2d at 775. In Leftwich , "the adjudication of neglect was based upon the harm to the children as a result of respondent's substance abuse; it was not based solely upon respondent's substance abuse." Id. at 306, 645 S.E.2d at 775 (emphasis in original). By contrast, the trial court in In re E.P. could not adjudicate neglect where "there was no substantial evidence of any connection between the substance abuse and domestic violence and the welfare of [the] two children." Id. at 306, 645 S.E.2d at 775 (internal quotation marks omitted) (alteration in original).
*356 Here, as in In re E.P. , there is no substantial evidence to show Kenneth suffered any physical, mental, or emotional impairment, or that he was at a substantial risk of suffering such impairment, as the result of Respondent's substance abuse. See In re C.M. , 183 N.C.App. at 210, 644 S.E.2d at 592. While Respondent admitted to drinking alcohol on the evening of 9 December 2014, she left Kenneth in the care of another adult that evening. Respondent sought to retrieve Kenneth the following morning, and there is no evidence Respondent was intoxicated at that time. Without evidence showing Respondent cared for Kenneth while intoxicated, or showing the babysitter did not or could not properly care for Kenneth, the events of 9-10 December 2014 do not demonstrate harm or a substantial risk of harm to Kenneth.
The only evidence suggesting Respondent cared for Kenneth while under the influence is her statement to Ms. Reynolds on 5 December 2014, in which she stated she "almost dropped" Kenneth because she was "a little tipsy." While this evidence is not to be ignored, the strength of the evidence is undercut by Respondent's subsequent statement that she was "just playing" with Ms. Reynolds. Also, we note Ms. Reynolds testified the only time she saw Respondent intoxicated, during the time they lived together, was the night of 9 December 2014. Respondent's off-hand comment about "almost dropping" Kenneth is not sufficient to demonstrate a substantial risk of harm.
In adjudicating Kenneth neglected, the trial court relied upon its finding, "substance abuse led to termination of [Respondent's] parental rights to two other children." Under the statutory definition of "neglect," "it is relevant whether the juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." N.C. Gen. Stat. § 7B-101(15) (2015). Here, the trial court found "substance abuse" led to the termination of Respondent's parental rights to her two other children. However, there was no evidence presented to prove these children were in fact abused or neglected, or that the termination of Respondent's parental rights was due to abuse or neglect. Without such evidence, the trial court cannot not logically infer the previous termination cases support a conclusion that Kenneth is, or is likely to be, neglected in this case. See In re J.C.B. , 233 N.C.App. 641, 644, 757 S.E.2d 487, 489, disc. review denied , 367 N.C. 524, 762 S.E.2d 213 (2014) (holding that, when a trial court relies on instances of past abuse or neglect to other children in adjudicating a child neglected, the court is required to find "the presence of other factors to suggest that the neglect or abuse will be repeated").
*357 Absent evidence Kenneth suffered physical, mental, or emotional impairment, or that he was at a substantial risk of such impairment, the trial court could not make the necessary findings of fact to adjudicate him neglected. Thus, the trial court committed error in adjudicating Kenneth neglected, and we reverse the adjudication order. Because we reverse the adjudication order, the disposition order must also be reversed. In re S.C.R. , 217 N.C.App. 166, 170, 718 S.E.2d 709, 713 (2011).
REVERSED.
Judges Elmore and McCullough concur.

A pseudonym is used to protect the identity of the juvenile and for ease of reading.

Respondent's cousin is referred to by a pseudonym to protect the identity of the juvenile.

We note that while the death of another child in the home can be relevant to a determination that the juvenile is neglected, such is the case only where the child "died as a result of suspected abuse or neglect." N.C. Gen. Stat. § 7B-101(15). No evidence was presented in this case demonstrating that the child's death was suspected to be the result of abuse or neglect.