INMAN, Judge.
Alfonzo Cuba, also known as Dwight Saunders, ("Father") appeals from an order terminating his parental rights. Father argues that several of the trial court's findings of fact are unsupported by clear, cogent and convincing evidence, and that its conclusions of law are therefore not supported by its findings of fact. Specifically, Father asserts that the trial court's justification for termination of his parental rights-neglect and abandonment-were unsupported by the evidence. After careful review, we affirm the trial court's order.
Factual and Procedural Background
This appeal arises from a private termination of parental rights case in which the respondent is the father of the juvenile R.T.W. ("Robert")[1] , who is five years old. The petitioners are Robert's maternal aunt and uncle, Angela ("Aunt") and Jeremy ("Uncle") Amick.
Robert was born out of wedlock on 20 April 2012 to Father and Sarah Solano. At the time of Robert's birth, Father was incarcerated on pending criminal charges in Forsyth County Jail. Robert spent the first five weeks of his life in the hospital receiving neonatal intensive care for drug withdrawal. Shortly after Robert's discharge, Sarah enrolled in a residential rehabilitation program in Durham that allowed her to care for Robert.
Father was released on bond in or around September 2012, while Sarah and Robert were enrolled in the rehabilitation program. Father visited Sarah and Robert several times and brought diapers and clothes to them until he was re-incarcerated in or around December 2012. At the time of the termination of parental rights hearing, Father remained incarcerated, scheduled to be released in or around August 2017.
In or around May 2013, Sarah was forced out of the rehabilitation program. Durham County Department of Social Services ("Durham County DSS") contacted Aunt and Uncle on 23 August 2013 seeking a safe and secure home for Robert after Sarah and he were evicted from a half-way house in Durham County. Durham County DSS placed Robert with Aunt and Uncle. On 10 March 2014, the trial court entered a custody order awarding permanent legal and physical custody of Robert to Aunt and Uncle.
On 14 December 2015, Aunt and Uncle filed a petition to terminate Father's and Sarah's parental rights. On 3 August 2016, the trial court entered an order terminating their parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect) and (7) (abandonment). Father filed timely notice of appeal.[2]
Analysis
Father argues that the trial court erred by concluding that grounds existed to terminate his parental rights based on neglect and abandonment. We address Father's argument regarding abandonment first, and hold that there was clear, cogent, and convincing evidence to support the trial court's findings of fact and that those findings support the trial court's conclusion that Father "willfully abandoned" Robert for at least the six consecutive months preceding the filing of the petition. Because termination was proper based on abandonment, we decline to decide the issue of neglect.
A. Standard of Review
Every proceeding to terminate parental rights involves two distinct stages, the adjudication stage and the disposition stage. In re D.H. , 232 N.C. App. 217, 219, 753 S.E.2d 732, 734 (2014) (citation omitted). At "the adjudication stage, the trial court must determine whether there exists one or more grounds for termination of parental rights under N.C. Gen. Stat. § 7B-1111(a)." Id . N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support termination. In re Taylor , 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990) (citation omitted). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D. , 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) (citing In re Huff , 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. review denied, appeal dismissed , 353 N.C. 374, 547 S.E.2d 9 (2001) ). "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." In re S.C.R. , 198 N.C. App. 525, 531, 679 S.E.2d 905, 909 (2009) (internal quotation marks and citations omitted). However, "[t]he trial court's conclusions of law are fully reviewable de novo by the appellate court." In re S.N., X.Z. , 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008) (quotation marks omitted), aff'd per curiam , 363 N.C. 368, 677 S.E.2d 455 (2009).
B. Findings of Fact
Pursuant to N.C. Gen. Stat. § 7B-1111(a)(7), the trial court may terminate parental rights when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C. Gen. Stat. § 7B-1111(a)(7) (2015). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child. The word willful encompasses more than an intention to do a thing; there must also be purpose and deliberation." In re Adoption of Searle , 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986) (internal quotation marks and citations omitted). Factors to be considered include a parent's financial support for a child and "emotional contributions," such as the "respondent's display of love, care and affection for his children." In re McLemore , 139 N.C. App. 426, 429, 533 S.E.2d 508, 510 (2000) (citations omitted).
The trial court made the following findings of fact regarding Father's willful abandonment of Robert:
8. During the Father's incarceration, a representative from [DSS] obtained samples from the Father to perform a paternity test on behalf of [Durham County DSS] regarding [Robert].
9. At the time of [Robert's] birth ..., the Mother was battling a drug addiction and had battled a drug addiction for some time previous to the child's birth. The Mother had an unstable housing situation and was estranged from her family.
....
20. In late 2012 or early 2013, the Father was out of jail for a number of months. He visited the Mother and [Robert] at [a] rehab facility.
....
22. In May of 2013, the Mother called Petitioner[ ] and said that she had been kicked out of the treatment facility and had nowhere to go. The two of them discussed other options for treatment, specifically residential facilities, but the Mother refused to accept those options.
....
24. During this period of time, the Father lost contact with the Mother and with [Robert], and did not initiate any steps or make any attempts to reestablish contact.
....
26. Sometime in 2013, the Father was incarcerated for a number of drug related charges and convictions, and for parole violations.
27. The Father remains incarcerated until his expected release in August of 2017.
28. The Father did not have an address for the Mother when he lost contact with her, and states that he did not know where the child was living.
29. However, because of contact made by [DSS], the Father was aware of the involvement of [DSS] in [Robert's] case.
30. Furthermore, the Father also had an address in Winston-Salem at which he received mail while incarcerated. The address was the grandmother's address, and he contacts her at least once or twice a week.
....
32. The Father wrote letters from prison and had the ability to write letters to inquire about [Robert].
33. At no time in question did the Father inquire with any person regarding the location of [Robert] from the time of his re-incarceration in 2013 through the date of the filing of the Petition to Terminate Parental Rights on December 14, 2015.
34. The Father did not testify of any letters, telephone calls, or other attempts by him to communicate with the Mother, [Robert], [DSS], or any other entity regarding [Robert] during that same time period.
35. The lack of effort by the Father to contact [Robert] or to locate [Robert] during this time showed a refusal to undertake natural and legal obligations of a parent and indicated a willful ... abandonment of [Robert].
....
51. From September of 2013 through the date of the filing of the Petition to Terminate Parental Rights on or about December 14, 2015, the Father has not made any telephone calls, text messages, emails or other communication with any person regarding [Robert].
52. The Father has not sent any gifts, cards, birthday presents, Christmas presents or anything at all for [Robert] during the same period of time.
53. The Father has not provided any support, care, control or supervision for [Robert], nor fulfilled any parental obligation or duty with regard to [Robert] since 2013.
54. The Father testified that, although incarcerated, he had the ability to obtain and provide items to meet some of [Robert's] needs.
55. The Father has not inquired with any person regarding the well[-]being of [Robert] from September of 2013 through December 14, 2015.
Father challenges portions of several of the trial court's findings of fact. We are bound by those findings not challenged by Father on appeal. See Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trail court, the finding is presumed to be supported by competent evidence and is binding on appeal.") (citations omitted). Moreover, we review only those findings necessary to support the trial court's determination that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) to terminate Father's parental rights. See In re T.M. , 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) ("erroneous findings unnecessary to the determination [of neglect] do not constitute reversible error.") (citation omitted).
Father first argues that no evidence supported the trial court's finding of fact number 8 that it was Durham County DSS that met with him to obtain a DNA sample for a paternity test. Father cites his trial testimony that he believed the DSS representative was from Forsyth County. Father further contends there was no evidence to support finding number 29, that he was aware of DSS involvement with Robert.
Father testified that DSS visited him while he was incarcerated for the purposes of obtaining a DNA sample from him to establish his paternity. Father testified that while it was unclear whether it was Durham County or Forsyth County DSS, he believed it was Forsyth County DSS. Thus, Father contends, while there was evidence that DSS met with Father concerning Robert, the evidence was insufficient for the trial court to find that it was Durham County, not Forsyth County. But based on Father's testimony, it was reasonable for the trial court to infer and find as fact that Father was aware of DSS involvement with Robert.
Father next challenges portions of findings 33, 34, 51, and 55 to the extent that they find that he never made any attempt to ascertain Robert's whereabouts. We are not persuaded. The only testimony in the record concerning Father's attempts to locate Robert was that he called the half-way house where Robert's mother Sarah lived, and that the half-way house staff refused to disclose any information concerning Sarah's family. However, there is no evidence in the record that Father's contact with the half-way house was for the purpose of locating Robert, as opposed to locating Sarah, and the date of this alleged contact is unclear. No other evidence or testimony was presented regarding attempts made by Father to locate Robert, particularly during the relevant six-month statutory period immediately preceding the filing of the petition. Thus, we conclude the trial court's findings of fact were supported by the record evidence. See In re Whisnant , 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (holding it is the trial judge's duty to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom").
C. Conclusions of Law
Father argues that his "inability" to contact Robert negates a conclusion of willfulness. We disagree.
"Incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision." In re Yocum , 158 N.C. App. 198, 207-08, 580 S.E.2d 399, 405, aff'd per curiam , 357 N.C. 568, 597 S.E.2d 674 (2003) (citations omitted). Thus, a showing of incarceration alone is insufficient to prove willful abandonment. In re Blackburn , 142 N.C. App. 607, 612, 543 S.E.2d 906, 909 (2001) (citing In re Maynor , 38 N.C. App. 724, 726-27, 248 S.E.2d 875, 877 (1978) ). As this Court noted, however, when considering a respondent parent's incarceration with respect to another ground for termination (neglect), " '[a]lthough his options for showing affection are greatly limited, the respondent will not be excused from showing interest in his child's welfare by whatever means available .' " In re J.L.K. , 165 N.C. App. 311, 318-19, 598 S.E.2d 387, 392 (emphasis added) (quoting Whittington v. Hendren , 156 N.C. App. 364, 368, 576 S.E.2d 372, 376 (2003) ), disc. review denied , 359 N.C 68, 604 S.E.2d 314 (2005). Nevertheless, "the circumstances attendant to a parent's incarceration are relevant when determining whether a parent willfully abandoned his or her child, and this Court has repeatedly acknowledged that the opportunities of an incarcerated parent to show affection for and associate with a child are limited." In re D.M.O. , --- N.C. App. ----, ----, 794 S.E.2d 858, 862-63 (2016).
In D.J.D. , this Court similarly considered the termination of an incarcerated parent's parental rights based upon abandonment. In re D.J.D. , 171 N.C. App. 230, 241, 615 S.E.2d 26, 33-34 (2005). In that case, the trial court found that, while the respondent was incarcerated: (1) "he ... had absolutely no contact with his children"; (2) "[h]e ha[d] not made any telephone calls, sent any cards, written any letters, nor arranged for any gifts"; (3) "no one acting on his behalf (family member or friend) ha[d] contacted ... [DSS] requesting a visit with or attempting to communicate with [his] children"; and (4) he had paid "no child support ... but ... was not employed at the time." Id . at 235, 615 S.E.2d at 30. The trial court further found that while the respondent "did have contact with his mother, sister, and the children's mother," he never requested those individuals, or any other family member or friend, to contact DSS to check on the welfare of his children nor to ascertain an address where he could send letters to his children. Id . The trial court additionally found that "[a]lthough [the] respondent is limited as to what he can do at this time to provide for his children while he is incarcerated, he has failed to provide any contact, love, or affection for his children." Id . at 236, 615 S.E.2d at 30. Consequently, the trial court terminated the respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(7). Id. at 236, 615 S.E.2d at 31. On appeal, this Court held that these findings were sufficient to terminate the respondent's parental rights based on abandonment. Id. at 241, 615 S.E.2d at 34. This Court noted that the findings of fact "established that the respondent, although able to while incarcerated, 'ha[d] taken none of the steps to develop or maintain a relationship with his children.' " D.M.O ., --- N.C. App. at ----, 794 S.E.2d at 864 (quoting In re D.J.D. , 171 N.C. App. at 241, 615 S.E.2d at 34 ).
Here, the trial court found that Father had written letters from prison to other family members, was aware of DSS involvement with Robert, and thus had the ability to inquire about Robert but failed to make any such inquiry. The trial court further found that Father had failed to contact Robert, and failed to send any gifts, cards, or any kind of support for Robert since 2013. We note Father's contention that his demonstrated concern after receiving notice of the petition to terminate his parental rights, along with his participation in the proceedings, did not constitute conduct which evinced a purpose to relinquish his parental claims to Robert. However, because these events occurred after the filing of the petition to terminate Father's parental rights, they were not relevant considerations. See N.C. Gen. Stat. § 7B-1111(a)(7) (limiting consideration of whether a respondent willfully abandoned the juvenile to the period preceding the filing of the petition). Accordingly, we hold the trial court did not err by concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) to terminate Father's parental rights.
Conclusion
Because we conclude that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) to support the trial court's order, we need not address the remaining ground found by the trial court to support termination. Taylor , 97 N.C. App. at 64, 387 S.E.2d at 233-34. Accordingly, we affirm.
AFFIRMED.
Report per Rule 30(e).
Judges CALABRIA and DIETZ concur.

A pseudonym is used to protect the identity of the juvenile and to promote ease of reading.

Sarah did not appeal the termination of her parental rights.