IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-94

No. COA20-29

Filed 6 April 2021

Wilkes County, No. 15 JA 200

IN THE MATTER OF: S.R.J.T.

Appeal by respondent-mother from orders entered on 17 July 2018 and 27 September 2019 by Judge David V. Byrd in District Court, Wilkes County. Heard in the Court of Appeals 17 November 2020.

> *Vannoy, Colvard, Triplett & Vannoy, PLLC, by Daniel S. Johnson, for petitioner-appellee Wilkes County Department of Social Services.*
>
> *Lisa Anne Wagner for respondent-appellant-mother.*

STROUD, Chief Judge.

¶ 1   Respondent-Mother appeals from the trial court's order adjudicating Scottie[1] as a neglected and dependent juvenile and from the trial court's disposition order which ceased reunification efforts and granted guardianship of Scottie to his aunt. Because the trial court's findings support its conclusion that Scottie was neglected, we affirm the adjudication order as to neglect, and we affirm in part, reverse in part,

---

[1] Pseudonyms are used to protect the identity of the juvenile.

and remand the disposition order for entry of an order containing findings of fact in compliance with North Carolina General Statute § 7B-906.1(n).

## I. Background

Mother has an extensive history with the Wilkes County Department of Social Services ("DSS"), and her parental rights were terminated to two children in 2008 and 2010. DSS initially removed Scottie and his brother[2] in 2015 due to issues of domestic violence and substance abuse. Scottie was adjudicated neglected, and Mother previously appealed this order. On 20 June 2017, this Court reversed the trial court's adjudication order in an unpublished opinion. *See In re J.L.T. and S.R.J.T.,* 254 N.C. App. 240, 801 S.E.2d 391 (2017) (unpublished).

On 3 July 2017, DSS filed a new petition alleging Scottie was neglected and dependent. An adjudication hearing was held on 18 December 2017. On 17 July 2018 the trial court entered an adjudication order which declared Scottie to be neglected and dependent. Disposition hearings were held on 8 January 2018, 6 March 2018, and 21 August 2018. The written disposition order, entered on 27 September 2019, ceased reunification efforts, granted guardianship of Scottie to his paternal aunt, and suspended visitation and further hearings. Mother timely appealed from the

---

[2] Mother has only appealed as to Scottie, and Scottie's Father is not a party to this appeal.

disposition order and petitioned this Court for a writ of certiorari in the event we found her notice of appeal to be defective.

## II.     Petition for Writ of Certiorari

Mother's notice of appeal stated, Mother "hereby gives Notice of Appeal to the Court of Appeals of North Carolina from the Adjudication Judgment and Dispositional Order that was filed on September 27th 2019." However, the adjudication order was filed on 17 July 2018. Because we can infer from the notice of appeal that Mother intended to appeal the both the adjudication and disposition orders, in our discretion, we allow her petition as to the disposition order. N.C. R. App. P. 21(a)(1).

## III.     Adjudication

Mother argues, "[t]he trial court erred by adjudicating Scottie neglected and dependent when the trial court failed to make necessary finding of fact, there is insufficient evidence to support the findings of fact the trial court did make, and the findings that are supported by the evidence are insufficient to support its conclusions of law."

### A.  Standard of Review

> We review an adjudication under N.C. Gen. Stat. § 7B-807 to determine whether the trial court's findings of fact are supported by clear and convincing competent evidence and whether the court's findings support its conclusions of law. The clear and convincing standard is greater than the preponderance of the evidence standard required in most

civil cases. Clear and convincing evidence is evidence which should fully convince. . . . [W]e review a trial court's conclusions of law de novo.

*In re N.K.*, ___ N.C. App. ___, ___, 851 S.E.2d 389, 392 (2020) (quoting *In re M.H.*, ___ N.C. App. ___, ___, 845 S.E.2d 908, 911 (2020)). Unchallenged findings are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

**B. Adjudication of Neglect**

Mother argues, "DSS failed to present any evidence that the children were present for, or impacted by, any acts of domestic violence or substance use, or that they suffered any physical, mental or emotional impairment as a result."

A neglected juvenile is defined as one

> who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.]

N.C. Gen. Stat. § 7B-101(15) (2017). "[I]n order for a court to find that the child resided in an injurious environment, evidence must show that the environment in which the child resided has resulted in harm to the child or a substantial risk of harm." *In re K.J.B.*, 248 N.C. App. 352, 354, 797 S.E.2d 516, 518 (2016). "A trial court's failure to make specific findings regarding a child's impairment or risk of harm will not require reversal where the evidence supports such findings." *Id.*

¶ 8    Here, the trial court found:

> 5. The Respondents have unstable living arrangements and maintain a strange, ongoing, and inappropriate relationship with one another. [Mother] alternates living with [Scottie's Father] and [Aaron], choosing to stay with whichever father has money and drugs to offer to her.
>
> 6. [Mother] and [Scottie's Father] have failed numerous drug screens during the time that the children have been in the care of DSS.
>
> . . . .
>
> 8. On October 6, 2017, the Respondents submitted to hair follicle drug tests and the results were as follows: [Mother]: positive for amphetamines and methamphetamine[.]
>
> 9. On October 13, 2017, social worker Carver made a surprise visit to [Aaron's] home. When she arrived, [Aaron] was lying on a couch and [Mother] was scurrying around the kitchen. [Mother] told social worker Carver that she was pouring a beer out. Social worker Carver noticed a needle on the kitchen counter, two more needles in the sink, a packet of some sort, and a spoon containing a burned substance. [Aaron] told the social worker that he didn't know why [Mother] was using the "junk" in his home. [Mother] admitted that she was using drugs and that she was depressed since her children had not been at home.
>
> . . . .
>
> 13 Since the children have been in the care of DSS, . . . . [Scottie] has been diagnosed with post-traumatic stress disorder.
>
> 15. [Scottie] receives counseling from Brooke Gregory at Kids Count Pediatrics. Therapist Gregory was duly

qualified as an expert witness and provided the following opinions regarding [Scottie]:

> (a) He suffers from post-traumatic stress disorder as a result of matters he witnessed while in the care of [Mother] and [Scottie's Father], including drug use, domestic violence, and his mother moving back and forth between [Scottie's Father] and [Aaron];
> (b) He regressed in treatment following visits with his parents. Interaction with his parents increased his behaviors of acting out, not listening, and oppositional defiance;
> (c) He experienced nightmares of being left alone and someone cutting his head off after contact with his parents;
> (d) He was exposed to sexual behavior during the time that he was with his parents. He has talked to other children about sexual behavior and engaged in sexualized conduct; and
> (e) It is not in the best interests for [Scottie] to have visitation with his biological parents.

And the trial court concluded:

> 3. With regard to neglect, each child would be placed at a serious risk of impairment in the event that they were placed with their parents due to the parents' ongoing drug abuse and their unstable living arrangements. Each of the children would be placed at substantial risk of physical, mental, and emotional impairment in the event that they were returned to their parents.

### 1. *Finding of Fact No. 15*

¶ 9     Mother raises several arguments regarding Finding of Fact No. 15. Mother argues that portions of finding of fact 15(a) and (e) are conclusions of law and should be reviewed de novo. We disagree. First, we note that Finding No. 15 is phrased as

a recitation of testimony as to facts about the juvenile since it specifically lists the observations and opinions of Therapist Gregory. *See In re L.C.*, 253 N.C. App. 67, 70, 800 S.E.2d 82, 86 (2017). Although recitations of evidence may not allow for appropriate appellate review where the trial court fails to make findings demonstrating if it found the evidence to be credible, *id.*, when we consider Finding No. 15 in the context of the entire order, the trial court did determine the evidence to be credible and this finding is supported by the evidence. To the extent that Finding 15(e) is a finding of fact and not a recitation of testimony, we review the trial court's determination of whether visitation is in the best interest of the juvenile for abuse of discretion. *In re C.M.*, 183 N.C. App. 207, 215, 644 S.E.2d 588, 595 (2007) ("This Court reviews the trial court's dispositional orders of visitation for an abuse of discretion.").

¶ 10        Mother also contends Finding 15(d) is not supported by the evidence. Ms. Gregory testified about the reasons she saw Scottie:

> Q. Why did you begin work counseling with [Scottie]?
>
> A. He was referred to my case load due to family circumstances where he was removed from his family and lives with [his Aunt]. There's a pretty significant neglect and abuse history there, so he has post-traumatic stress disorder.
>
> Q. When did you diagnose [Scottie] with post-traumatic stress disorder?

A. On 6/14/16.

Q. And it's your opinion that that stress disorder resulted from abuse and the circumstances that he encountered in his parents home?

A. Yes, sir.

Q. How did you arrive at that diagnosis?

A. Well, there are several criteria you need in order to get diagnosed with post-traumatic stress disorder. [Scottie] exhibits mood changes, anxiety, sleep disturbances, eating disturbances, attachment issues, and [Scottie] qualifies for all of those.

. . . .

Q. Now, has [Scottie] indicated to you during counseling sessions that he had witnessed his parents using illegal drugs?

A. Yes.

Q. What did he tell you about seeing his parents use illegal drugs?

A. He has talked about seeing needles. There's an actual quote here in the letter from July 19th, 2017 that I provided for Department of Social Services. "My parents will never get me back because they do drugs. They take a shot every day. I have seen them. They put medicine in their arm with a shot."

Ms. Gregory testified, "There has been some sexualized behavior after he has interacted with his parents that comes out in session. I don't have enough to pursue

that at this moment[.]" On cross examination, Ms. Gregory stated, "I'm not sure where the sexualized behavior has come from."

¶ 11 The portion of the finding of fact 15(d) about exposure to sexual behavior "during the time that he was with his parents" is not supported by clear and convincing evidence. The rest of the challenged portions of Finding No. 15 are supported by clear and convincing evidence which support the trial court's conclusion that Scottie was a neglected juvenile. *In re N.G.,* 186 N.C. App. at 12-13, 650 S.E.2d at 52. In addition, these findings, considered along with the other unchallenged findings regarding drug abuse and domestic violence in the home, Scottie's regression after visitation with the parents, and the diagnosis of post-traumatic stress disorder demonstrate that "the environment in which the child resided has resulted in harm to the child or a substantial risk of harm." *In re K.J.B.*, 248 N.C. App. at 354, 797 S.E.2d at 518. We affirm the trial court's adjudication of neglect on this basis and need not address the other adjudicatory grounds in the court's order. *See In re F.C.D.,* 244 N.C. App. 243, 250, 780 S.E.2d 214, 220 (2015) ("Because this ground standing alone is sufficient to support the adjudication of abuse, we need not address the trial court's two other grounds for adjudicating . . . an abused juvenile.").

## IV. Disposition Order

¶ 12 Mother argues, "[t]he trial court reversibly erred and abused its discretion by ceasing reunification, granting guardianship of Scottie to his paternal aunt at the

initial disposition, and waiving review hearings without making statutorily required findings."

## A.     Standard of Review

"This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *In re C.M.*, 183 N.C. App. at 213, 644 S.E.2d at 594. "An abuse of discretion occurs when a trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *Id.* This Court "review[s] statutory compliance *de novo*." *In re N.K.*, ___ N.C. App. at ___, 851 S.E.2d at 395."

## B.     Reunification

"Reunification shall remain a primary or secondary plan unless the court made findings under G.S. 7B-901(c) or makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C. Gen. Stat. § 7B-906.2(b) (2017).

> At any permanency hearing . . . the trial court shall make written findings as to each of the following, which shall demonstrate lack of success:
>     (1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
>     (2)   Whether   the   parent   is   actively

participating in or cooperating with the plan,
the department, and the guardian ad litem for
the juvenile.
(3) Whether the parent remains available to
the court, the department, and the guardian
ad litem for the juvenile.
(4) Whether the parent is acting in a manner
inconsistent with the health and safety of the
juvenile.

N.C. Gen. Stat. § 7B-906.2(d) (2017).

Although "use of the actual statutory language [is] the best
practice, the statute does not demand a verbatim recitation
of its language." Instead, "the order must make clear that
the trial court considered the evidence in light of whether
reunification would be futile or would be inconsistent with
the juvenile's health, safety, and need for a safe,
permanent home within a reasonable period of time."

*In re L.E.W.*, 375 N.C. 124, 129-30, 846 S.E.2d 460, 465 (2020) (alteration in original)

(citation omitted).

¶ 15        Here, the trial court found as following regarding Scottie:

1. The status of the above-named minor children is
accurately described in the Court Summaries and Reports
prepared by DSS and the GAL which were introduced into
evidence for purposes of disposition in these matters and
are incorporated herein by reference as Findings of Fact.

2, The children have been declared neglected and
dependent juveniles as those terms are defined by N.C.G.S.
§ 7B-101.

3. The children have not been in the custody of their
parents since the fall of 2015. It would be contrary to the
children's health and safety to be returned to the home of

a parent as a result of their special needs and the instability of their parents.

4. There are no issues regarding paternity of the children. . . .

5. The Court has considered the requirements of N.C.G.S. § 7B-901(c) and finds that DSS should not be required to utilize reasonable efforts to reunify the children with a parent. [Mother] and [Scottie's Father] have had their parental rights terminated involuntarily to other children. Each of these parents have a significant history of substance abuse and their living arrangements are not suitable. . . .

6. [Scottie] has been placed in the care of his paternal aunt, [Rebecca], since April 2016. He has been diagnosed with post-traumatic stress disorder from exposure to domestic violence, abuse, and his parents' substance abuse which he witnessed while in the care of his parents. He displays anxiety, mood changes, sleep and eating disorders, and attachment issues. He is fearful of being removed from his aunt. [Scottie] receives counseling from therapist Brooke Gregory at Kids Count Pediatrics. Visitation between [Scottie] and his parents was ceased at the recommendation of therapist Gregory. [Scottie] has told the GAL's office that he does not want to live with his parents.

. . . .

8. [Rebecca] has the financial means and capability to care for [Scottie]. She has provided care solely for the child with no assistance from his parents for over two years. [Rebecca] understands the legal significance of the appointment and has adequate resources to care appropriately for the child. [Scottie] is bonded to his aunt.

9. The children are not members of a state or federally

recognized Indian tribe.

The trial court concluded:

> 1. The Court has jurisdiction of the subject matter and the parties.
>
> 2. DSS made reasonable efforts to prevent or eliminate the need for placement of the minor children; however, these efforts were not effective in light of the parents' histories of drug abuse, instability, and incarceration. DSS . . . placed [Scottie] in the care of a paternal relative.
>
> 3. The best interests of the minor children would be best served by the disposition set forth in the Decree below. DSS shall not be required to utilize reasonable efforts to reunify either child with a parent.
>
> 4. Any Finding of Fact that is a more appropriate Conclusion of Law is incorporated herein by reference.
>
> Based upon the foregoing Findings of Fact and Conclusions of Law, it is ORDERED, ADJUDGED, AND DECREED that:
>
> . . . .
>
> 3. [Rebecca] is appointed as guardian of the person of [Scottie] pursuant to N.C.G.S. § 7B-600. No accountings or bond shall be required. No further review hearings shall be required concerning this child. Neither of [Scottie's] parents shall have any visitation unless the same is approved by the Court.

These findings make it clear that the trial court "considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of

time." *Id.* at 129-30, 846 S.E.2d at 465. In addition, the trial court did not abuse its discretion by ceasing reunification efforts based upon these findings.

**C.     Guardianship**

¶ 16        Mother argues, "[t]he trial court reversibly erred by failing to make necessary findings of fact to support its order granting guardianship of Scottie to [Rebecca]." Mother argues the trial court did not make a finding that her conduct was inconsistent with her constitutionally protected status as a parent and she had "participated in a substance abuse assessment and begun receiving [substance abuse] treatment, had consistently been providing clean drug screens . . . had inquired of DSS what she could provide for Scottie's needs, and was on waiting lists for housing of her own." DSS argues that Mother did not raise this constitutional issue at trial and should not be considered for the first time on appeal.

> "'[P]arents have a constitutionally protected right to the custody, care and control of their child, absent a showing of unfitness to care for the child.'" "[A] parent may lose the constitutionally protected paramount right to child custody if the parent's conduct is inconsistent with this presumption or if the parent fails to shoulder the responsibilities that are attendant to rearing a child." Prior to granting guardianship of a child to a nonparent, a district court must "clearly address whether [the] respondent is unfit as a parent or if [his] conduct has been inconsistent with [his] constitutionally protected status as a parent[.]" "[A] trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence."

*In re R.P.*, 252 N.C. App. 301, 304, 798 S.E.2d 428, 430 (2017) (alterations in original) (citations omitted).

¶ 17     This Court has held that where a parent is on notice that guardianship with a third party has been recommended and will be determined at the hearing, if the parent fails to raise this argument at the hearing, appellate review of the constitutional issue is waived:

> "[T]o apply the best interest of the child test in a custody dispute between a parent and a non-parent, a trial court must find that the natural parent is unfit or that . . . her conduct is inconsistent with a parent's constitutionally protected status." This finding should be made when the court is considering whether to award guardianship to a non-parent. To preserve the issue for appellate review, the parent must raise it in the court below. However, for waiver to occur the parent must have been afforded the opportunity to object or raise the issue at the hearing. Here, although counsel had ample notice that guardianship . . . was being recommended, Respondent-mother never argued to the court or otherwise raised the issue that guardianship would be an inappropriate disposition on a constitutional basis. We conclude Respondent-mother waived appellate review of this issue.

*In re C.P.*, 258 N.C. App. 241, 246, 812 S.E.2d 188, 192 (2018) (first alteration in original) (citations omitted).

¶ 18     Here, Mother was on notice of the recommendations of both DSS and the GAL of guardianship or custody to be granted to the juvenile's aunt. The Court Report and GAL's reports prior to the last hearing recommended this plan. Mother did not

appear for the hearing and did not present any evidence opposing the recommendation of guardianship. Mother did not make any argument regarding her constitutional rights and did not make any argument against guardianship on this or any other basis. Instead, her counsel's argument to the trial court addressed primarily visitation, as he asked the trial court to maintain Mother's visitation along with drug testing. This argument is overruled.

## D.     Waiving Further Review Hearings

Mother argues, "[t]he trial court did not make adequate findings to support its decision to waive further review hearings." North Carolina General Statute § 7B-906.1(n) requires the trial court to make the following findings before having review hearings less often than every six months:

> (1) The juvenile has resided in the placement for a period of at least one year or the juvenile has resided in the placement for at least six consecutive months and the court enters a consent order pursuant to G.S. 7B-801(b1).
> (2) The placement is stable and continuation of the placement is in the juvenile's best interests.
> (3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months.
> (4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion.
> (5) The court order has designated the relative or other suitable person as the juvenile's permanent custodian or guardian of the person.

N.C. Gen. Stat. § 7B-906.1(n) (2019).

> This Court has held that the trial court must make written findings of fact satisfying each of the above criteria in its order. An order which fails to address all of the criteria will be reversed and remanded for entry of an order containing findings of fact in compliance with N.C. Gen. Stat. § 7B-906(b).

*In re M.M.*, 230 N.C. App. 225, 239, 750 S.E.2d 50, 59 (2013) (citation omitted). The trial court's disposition order, quoted above, is silent as to the third and fourth criteria listed above. Accordingly, we reverse this portion of the order and remand for additional findings regarding review hearings.

## V. Conclusion

We affirm the adjudication order as to Scottie being a neglected juvenile. We affirm the disposition order in part and reverse and remand in part. In particular, we reverse the provisions of the disposition order waiving review hearings and remand for entry of an order containing findings of fact in compliance with North Carolina General Statute § 7B-906.1(n).

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

Judge HAMPSON concurs.

Judge TYSON concurs in part and dissents in part with separate opinion.

TYSON, Judge, concurring in part, dissenting in part.

I concur with the majority's opinion holding that both the adjudication and disposition orders are properly before this Court. I also concur with the majority's conclusion that the portion of finding of fact 15(d) about Scottie's purported exposure to sexual behavior "during the time that he was with his parents" is not supported by clear and convincing evidence. The majority also correctly concludes the trial court's disposition order is silent, does not address the third and fourth statutory criteria, and it must be reversed and remanded for additional findings regarding review hearings.

The majority's opinion sets forth the proper standard of review, but it applies the incorrect "best interests" standard of appellate review to the adjudication order instead of the disposition. Further, the trial court erroneously and unlawfully delegated the availability and timing of a parent's visitation with a child to a therapist. Reunification of a child with parents cannot be ceased as a planned and statutorily mandated goal prior to the trial court's threshold findings and conclusions of parental unfitness or conduct inconsistent with their parental rights. These errors are prejudicial to warrant reversal. I respectfully dissent.

## I. Adjudication

### A. Standard of Review

The majority's opinion properly states the proper appellate standard of review for an appeal of an order of adjudication. This Court reviews a trial court's

adjudication of a child to be a neglected juvenile to determine whether the findings of fact are supported by clear and convincing evidence, and whether the conclusions are supported by the findings of fact. *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (citations omitted). "The trial court's conclusions of law are reviewable *de novo* on appeal." *In re K.J.D.*, 203 N.C. App. 653, 657, 692 S.E.2d 437, 441 (2010) (citation omitted).

¶ 24 "A trial court must determine by clear and convincing evidence that a parent's conduct is inconsistent with his or her protected status." *Weideman v. Shelton*, 247 N.C. App. 875, 880, 787 S.E.2d 412, 417 (2016) (citations and internal quotation marks omitted). The determination of parental unfitness or whether parental conduct is inconsistent with the parents' constitutionally protected status is reviewed *de novo*. *In re D.A.*, 258 N.C. App. 247, 249, 811 S.E.2d 729, 731 (2018).

¶ 25 The majority's opinion recites the proper standard of review, reviews and concludes the findings of fact are insufficient, but then applies the wrong standard of review to the orders. Regarding testimony given by Brooke Gregory, the expert witness and Scottie's therapist, the majority's opinion states: "To the extent that Finding 15(e) is a finding of fact and not a recitation of testimony, we review the trial court's determination of whether visitation is in the best interest of the juvenile for abuse of discretion." This assertion is erroneous.

¶ 26 Findings of fact must be supported by clear and convincing evidence to support

a statutory conclusion of parental abuse, neglect, or dependency before we review the trial court's "best interests" determination of disposition for an abuse of discretion. The testimony of the therapist may be relevant, but clear and convincing evidence must support findings and conclusions of unfitness or conduct inconsistent with parental rights to deny a parent's care, custody, and control with her child. *See* N.C. Gen. Stat. § 8C-1, Rule 401 (2019); *In re J.C.-B.*, __ N.C. App. __, 2021-NCCOA-65, __ S.E.2d __ (2021); *In re J.M., N.M.*, __ N.C. App. __, 2021-NCCOA-__, __ S.E.2d __ (2021); *In re N.T., A.T.* __ N.C. App. __, 2021-NCCOA-50, __ S.E.2d __, 2021 WL 795438 (2021) (unpublished). Since this finding is threshold and jurisdictional for the State to inject itself into the constitutionally protected status and relationship between a parent and child, the failure of the trial court to so find is not waived by the parents' failure to expressly assert it. *Id.*

### B. Neglect and Dependency

¶ 27 A neglected juvenile is defined as a child "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2019). Notwithstanding the many errors and deficiencies in the order, as is correctly pointed out in the majority's opinion, the majority concludes sufficient evidence shows Scottie is neglected. The majority's

opinion fails to address the unsupported finding and erroneous conclusion that Scottie is also dependent.

¶ 28     A dependent juvenile is "in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative childcare arrangement."  N.C. Gen. Stat. § 7B-101(9) (2019).  The trial court's dependency adjudication is also unsupported by findings of fact based upon clear and convincing evidence and is properly reversed.  *Id.*

### 2.     *Scottie's Therapist*

¶ 29     At the time of trial, Ms. Gregory, a therapist, had been meeting with Scottie twice a month for 18 months.  She testified Scottie suffered with PTSD from abuse, based upon some of Scottie's observed behaviors.  The trial court considered her testimony as an expert witness.

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply: (1) The testimony is based upon sufficient facts or data. (2) The testimony is the product of reliable principles and methods. (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702 (2019).

Ms. Gregory failed to explain either the correlation or to establish any causation between purported acts of parental neglect or dependency of Scottie and his PTSD diagnosis, nor provided any methods or psychoanalysis consistently supplied to support that conclusion.

After a year of meeting with Scottie, Ms. Gregory asserted he should not visit his parents because his nightmares purportedly increase when he interacts with them. Scottie has also told his therapist that he has seen drug paraphernalia in his home, and he likes to live with his aunt. Finally, the therapist testified about Scottie's sexualized behaviors because Scottie talked about sex and may have pulled down either his or another child's pants. Ms. Gregory admitted she does not know enough about that conduct to form an opinion of its origin or cause. No allegations of sexual exposure or abuse of Scottie by his parents are asserted or shown. We all agree part of finding of fact 15(d), Scottie's alleged exposure to sexual behavior "during the time that he was with his parents," is not supported by clear and convincing evidence and is erroneous.

Insufficient evidence supports the trial court's findings of fact. The findings are insufficient to support its conclusions of law. A trial court cannot find, adjudicate, and conclude a child is neglected or dependent without clear and convincing evidence to support the findings and the consequent conclusions. *See In re Gleisner,* 141 N.C.

App. at 480, 539 S.E.2d at 365.  The orders are properly reversed.

### 3.  DSS' Evidence

¶ 33    Evidence and testimony offered by DSS during trial relied heavily upon Mother's alleged previous drug use.  The last report DSS offered of purported drug use was dated over five months prior to the adjudication hearing.

¶ 34    The trial court concludes:

> 3. With regard to neglect, each child would be placed at a serious risk of impairment in the event that they were placed with their parents due to the parents' ongoing drug abuse and their unstable living arrangements. Each of the children would be placed at substantial risk of physical, mental, and emotional impairment in the event that they were returned to their parents.

¶ 35    Here, as we all agree, the trial court's order merely repeated allegations and testimony of the DSS social worker and Scottie's therapist, without engaging in the required judicial process of reconciling and adjudicating conflicts in the evidence. "Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated." *Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980) (holding each step in the logical sequence must be taken by the trial judge, "evidence must support findings; findings must support conclusions; conclusions support the judgment"). "Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law[.]" *Id.*

No clear and convincing evidence supported an adjudication of current neglect or dependency outside of generalized assertions. *Id.* No evidence tends to show Scottie has been injured or was at risk of injury in his home environment at the time of the adjudication hearing.

## II. Disposition

### A. Ceasing Reunification

Our General Statutes mandate: "Reunification *shall be* a primary or secondary plan unless the court made findings under G.S. 7B-901(c) or G.S. 7B-906.1(d)(3) . . . or the court makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C. Gen. Stat. § 7B-906.2(b) (2019) (emphasis supplied). The court shall not cease reunification efforts without supported findings of fact and conclusions of law which state continued efforts would be unsuccessful or inconsistent with the children's health or safety. *See In re P.T.W.*, 205 N.C. App. 589, 595, 794 S.E.2d 843, 848 (2016); *In re D.A.*, 258 N.C. App. at 253, 811 S.E.2d at 733-34.

Mother asserts the trial court erred and abused its discretion by ceasing reunification efforts without making statutorily required findings of fact. The majority's opinion states that the court's findings make it clear it considered the evidence in light of whether reunification would be futile or inconsistent with the juvenile's health and safety. However, as the trial court points out, Scottie has not

been in the custody of Mother since 2015. The court cites Mother's alleged and past history of substance abuse and the unsupported history of Scottie's PTSD.

¶ 39 The trial court's order fails to apply the mandatory standard, and its failure infringes upon the constitutional rights of the parents to the care, custody and control of their children. *See In re R.P.*, 252 N.C. App. 301, 304, 798 S.E.2d 428, 430 (2017) (holding a parent has a constitutional right to the care for their children absent a showing of unfitness). The order does not show the court concluded reunification with Mother would be futile or inconsistent with Scott's health, safety, and need for a permanent home within a reasonable period of time from the date of this adjudication to comply with the statute. *In re D.A.,* 258 N.C. App. at 253, 811 S.E.2d at 733-34.

¶ 40 The trial court failed to make the constitutionally and statutorily required findings to cease visitation and reunification efforts. *In re R.P.,* 252 N.C. App. at 304, 798 S.E.2d at 430. These conclusions are properly vacated.

### B. Guardianship

¶ 41 Mother argues the trial court reversibly erred by failing to make necessary findings of fact to support the order to grant custody to a third-party.

> Parents have a constitutionally protected right to the custody, care and control of their child, absent a showing of unfitness to care for the child. A parent may lose the constitutionally protected paramount right to child custody if the parent's conduct is inconsistent with this presumption or if the parent fails to shoulder the responsibilities that are attendant to rearing a child. *Prior*

> *to granting guardianship of a child to a nonparent, a district court must clearly address whether the respondent is unfit as a parent or if his conduct has been inconsistent with his constitutionally protected status as a parent. A trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence.*

*Id.* at 304, 798 S.E.2d at 430 (emphasis supplied) (alterations, citations and internal quotation marks omitted).

¶ 42    N.C. Gen. Stat. § 7B-600(a) provides "when the court finds it would be in the best interests of the juvenile, the court may appoint a guardian of the person for the juvenile." N.C. Gen. Stat. § 7B-600(a) (2019).

¶ 43    Prior to moving to and engaging in any "best interests" analysis, a trial court must have previously found "the natural parent is unfit or that his or her conduct is inconsistent with a parent's constitutionally protected status." *In re J.H.,* 244 N.C. App. 255, 272, 780 S.E.2d 228, 241 (2015) (citations omitted); *In re J.C.-B.,* ___ N.C. App. at ___, 2021 NCCOA-65, ¶17, __ S.E.2d at __; *In re N.T., A.T.* 2021-NCCOA-50, ¶7, 2021 WL 795438, at *2.

¶ 44    This Court reviews an order "that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *In re D.A.,* 258 N.C. App. at 249, 811 S.E.2d at 731 (citation omitted).

¶ 45    The majority's opinion asserts Mother did not appear for the dispositional hearing.  This assertion is not consistent with the record.  Mother was present in court for the hearing on 21 August until 12:15 p.m.  Mother had to report to work by 1:00 p.m. to maintain her employment, as is required under her plan, and this case was not called until 4:00 p.m.  Her attorney remained present and addressed the court on her behalf.

¶ 46    The majority's opinion also asserts Mother did not make any argument against guardianship.   Mother produced evidence that she had: (1) participated in a substance abuse assessment; (2) received substance abuse treatment; (3) consistently provided clean drug screens; (4) exercised visitation with her other child; (5) attained and maintained employment; (6) paid child support for her other child; and, (7) provided clothing and other items for her children.

¶ 47    Finally, the majority's opinion asserts Mother did not make an argument regarding her constitutional parental rights.  Mother's counsel argued her case had already been sent back from this Court previously, referring to this Court's reversal of the earlier adjudication for lack of clear and convincing evidence to support findings of neglect and dependency.  *See In re J.L.T.*, 254 N.C. App. 240, 801 S.E.2d 391, 2017 WL 2644127 at *6 (2017) (unpublished).

¶ 48    Mother's counsel continued, "I would ask the [c]ourt not to change the plans for [Scottie], leave it reunification (sic) without something more recent to start the

visits." Counsel referred to DSS having produced no new evidence in the more than eight months since the adjudication hearing, implying this case lacked the required evidence, as this Court concluded the earlier order had, and reunification should remain the primary plan. An argument for or to continue reunification is an assertion to uphold the Mother's constitutional right to custody and care of her child. *See In re P.T.W.,* 205 N.C. App. at 595, 794 S.E.2d at 849; *In re D.A.,* 258 N.C. App at 253, 811 S.E.2d at 733-34.

¶ 49        DSS reported her visits with her other child were going well. She inquired of DSS how she could provide for Scottie's needs. She has applied for and has been placed on waiting lists for her own housing.

¶ 50        The 27 September 2019 dispositional order does not contain any findings of fact or conclusions of law that Mother is unfit or that her conduct is inconsistent with her constitutionally protected status as a parent. *See id.* Further, the findings supporting Ms. Gregory's recommendation were more than eight months old at the time of the disposition hearing. No clear and convincing or timely evidence supports such findings. Further, the trial court's order contains no findings and ignores Mother's efforts and accomplishments to comply with her case plan. *See Coble,* 300 N.C. at 714, 268 S.E.2d at 190.

¶ 51        The majority's opinion correctly recognizes the foundational parental rights to the care, custody, and control of their children, but errs in affirming the trial court's

decision to cease reunification and award custody to a third-party without proof of either unfitness or conduct inconsistent with being a parent. The trial court failed to make the statutorily required findings to support its grant of guardianship. The findings do not support such conclusion. The order is properly vacated and remanded. *See In re J.H.*, 244 N.C. App. at 272, 780 S.E.2d at 241.

### III.   Waiver of Further Review Hearings

¶ 52        The disposition order provides "No further review hearings shall be required concerning [Scottie]." Mother correctly argues the trial court failed to make the statutorily required findings to support waiver of future review hearing.

¶ 53        N.C. Gen. Stat. § 7B-906.1 mandates a trial court to make all five of the following enumerated findings of fact supported by clear, cogent, and convincing evidence before future review hearings may be waived.

> (1) The juvenile has resided in the placement for a period of at least one year or the juvenile has resided in the placement for at least six consecutive months and the court enters a consent order pursuant to G.S. 7B-801(b1).
>
> (2) The placement is stable and continuation of the placement is in the juvenile's best interests.
>
> (3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months.
>
> (4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion.

> (5) The court order has designated the relative or other suitable person as the juvenile's permanent custodian or guardian of the person.

N.C. Gen. Stat. § 7B-906.1(n) (2019).

"The trial court must make written findings of fact satisfying each of the enumerated criteria listed in N.C. Gen. Stat. § 7B-906.1(n) [and its] failure to do so constitutes reversible error." *In re P.A.*, 241 N.C. App. 53, 66, 772 S.E.2d 240, 249 (2015) (citation omitted). This Court has previously held that strict compliance with these statutory provisions is mandatory before a trial court may discontinue and waive review hearings. *In re K.L.*, 254 N.C. App. 269, 284, 802 S.E.2d 588, 598 (2017).

Mother argues the trial court only addressed: (1) Scottie's placement is in the care of his aunt for more than a year; and, (5) Scottie's guardian is a relative. I concur with the majority's opinion that the trial court failed to address N.C. Gen. Stat. § 7B-906.1(n) prongs (3) and (4). The trial court failed to make the required findings to support waiver of further review hearings. The proper mandate in the absence of the required findings is to vacate and remand. *See id.*

## IV. Conclusion

I concur with the majority's opinion that both issues of adjudication and disposition are properly before this Court. I also concur with the majority's conclusion finding of fact 15(d) about Scottie's purported exposure to sexual behavior "during the time that he was with his parents" is not supported by clear and convincing evidence,

and the trial court's disposition order is silent on the third and fourth statutory criteria and must be vacated and remanded for additional findings regarding review hearings.

¶ 57        The trial court failed to make the threshold conclusion of unfitness or conduct inconsistent with parental rights to cease reunification. Further, the trial court failed to find clear and convincing evidence to support the findings and conclusions for adjudication, prior to proceeding to any "best interests" analysis in disposition.

¶ 58        The trial court failed to comply with the statute's mandatory findings of all factors to grant guardianship to a third-party. The orders are properly vacated and remanded. I respectfully concur in part and dissent in part.